# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TOYO TIRE & RUBBER CO., LTD., and<br>TOYO TIRE U.S.A. CORP.,<br><br>  Plaintiffs,<br><br>  v.<br><br>ATTURO TIRE CORP., and SVIZZ-ONE<br>CORP., LTD.,<br><br>  Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No: 14 C 206<br><br>Judge John Z. Lee<br>Magistrate Judge Susan E. Cox |
| ATTURO TIRE CORPORATION,<br><br>  Counter-Plaintiff,<br><br>  v.<br><br>TOYO TIRE & RUBBER CO., LTD., and<br>TOYO TIRE U.S.A. CORP.,<br><br>  Counter-Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |

## **ORDER**

  For the reasons discussed more fully below, the Court denies the Motion to Compel Production of Documents Concerning Non-Privileged Settlement Discussions [303] filed by Defendant Atturo Tire Corporation ("Atturo"). The Court denies the motion with prejudice to the extent it seeks the production of the documents listed in Exhibit A to Atturo's motion. The Court denies the motion without prejudice to the extent it seeks Atturo's attorneys' fees and costs. Atturo may choose to re-file a motion seeking sanctions associated with its successful February 2016 motion to compel (Dkt. 279, 283), but the Court will not grant Atturo attorneys' fees incurred in filing the instant motion. However, the Court notes that issues related to the

International Trade Commission action discussed in this opinion and the February 2016 motion to compel are central to the motion for summary judgment currently pending before the District Judge.[1] As such, the Court believes that these circumstances may "make an award of expenses unjust," but will reserve judgment on that issue for if and when Atturo re-files a motion for sanctions related to the February 2016 motion to compel. *See* Fed. R. Civ. P. 37(a)(5)(A)(iii). Any subsequent motion for sanctions should include an affidavit detailing any fees and costs Atturo seeks as sanctions.

## BACKGROUND

This Court has already written a number of opinions on discovery motions in this case, and will limit its discussion to the basic background facts and the issues salient to the instant motion. The merits of this suit revolve around Toyo's claims that Atturo infringed the protected trade dress on Toyo's Open Country M/T ("OPMT") tires. In response, Atturo filed counterclaims, primarily alleging that Toyo initiated an action before the International Trade Commission (the "ITC Action") against 23 respondents for alleged infringement of Toyo's design patents. (Dkt. 19, Countercl. at ¶ 46.) Atturo further alleges that Toyo entered into settlement agreements with the respondents to the ITC Action, and that those settlement agreements require the ITC respondents to agree to stop manufacturing, selling, offering to sell, distributing, or importing the tire that Toyo alleges infringes Toyo's trade dress, even though Atturo was not a party to the ITC Action and Atturo's tires were not the subject of the ITC Action. (*Id.* at ¶¶ 48-52.)

Needless to say, the facts and circumstances surrounding the ITC Action have been the subject of many of Atturo's discovery requests, given their importance to Atturo's counterclaims.

---

[1] In that motion, Toyo seeks summary judgment in its favor on Atturo's counterclaims, arguing that, under the *Noerr-Pennington* Doctrine, Toyo's settlement in the ITC Action and related communications cannot form the basis for Atturo's counterclaims. (Dkt. 331-1 at 1.)

Following protracted arguments and some motion practice regarding Toyo's production of a 30(b)(6) witness to testify about the ITC Action, the parties appeared to agree that the deposition would go forward by written question pursuant to Federal Rule of Civil Procedure 31. (Dkt. 251 at 2-3.) However, that agreement broke down when Toyo refused to answer more than 400 of Atturo's questions. (Dkt. 279-2 at 1.) As such, Atturo filed a motion to compel Toyo to produce a live 30(b)(6) witness or to answer the written deposition questions that Atturo had propounded. (Dkt. 279.) The Court granted that motion in part, and denied it in part, ordering Toyo to produce a live 30(b)(6) witness to testify regarding the ITC Action. (Dkt. 281.)

On March 1, 2016, Toyo produced a 30(b)(6) witness to testify about the ITC Action. (Dkt. 303 at 3-4.) Atturo claims in the instant motion that the witness was not prepared to testify because he could not testify as to certain discussions that were held between Toyo's attorneys and the respondent in the ITC Action, including the discussions that led to the settlement agreements that form the basis of Atturo's counterclaim. (Dkt. 303.) Atturo seeks an order compelling Toyo to produce certain documents that it believes Toyo's 30(b)(6) witness should have reviewed and been prepared to testify about at the March 2016 deposition. The documents Atturo seeks are emails authored by Toyo's outside counsel for the ITC Action, Adduci, Mastriani, & Schaumberg LLP ("Adduci"), "sent to a Toyo employee, and described by Toyo as '[c]ommunication re ITC settlement discussions with [one or more respondents].'" (Dkt. 303 at 6-7.) According to Atturo, oral discussions were likely held between Toyo's counsel and the respondents, and those discussions "were memorialized and reported back to Toyo;" Atturo seeks communications that contain these memorializations. (Dkt. 303 at 7.) Toyo has refused to produce these documents, claiming that they are shielded from discovery by the attorney-client privilege or the work product doctrine. Atturo does not believe that these communications are

3

protected by the attorney-client privilege because the descriptions of the conversations between Toyo and the ITC respondents "are underlying facts and are discoverable." (Dkt. 303 at 7.) For the reasons discussed below, the Court holds that the communications are protected by attorney-client privilege, and denies Atturo's motion.

**DISCUSSION**

"To determine whether a document is protected by the attorney-client privilege, the Seventh Circuit has adopted the following test: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his instance permanently protected, (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived." *United States v. National Association of Realtors*, 242 F.R.D. 491, 493-94 (N.D. Ill. 2007) (quoting *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991)). The privilege also applies to confidential communications made by the attorney to the client if such communications contain legal advice or reveal confidential information on which the client seeks advice. *Standard Chartered Bank PLC v. Ayala Int'l Holdings, Inc.*, 111 F.R.D. 76, 79 (S.D.N.Y. 1986) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 391 (1981)). Many cases note that facts are not protected by attorney-client privilege; in other words, the underlying facts communicated between an attorney and a client can be discovered through depositions or other discovery techniques. *See Upjohn*, 449 U.S. at 395-96 ("A fact is one thing and a communication concerning that fact is an entirely different thing. The client . . . may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication with his attorney"). However, this carve-out to the attorney-client privilege for underlying facts does not erode the protection afforded to the communications relaying those

4

facts. Thus, "[w]hile facts themselves are not protected by the privilege, *the communications of facts between an attorney and client are protected if transmitted for the purpose of obtaining legal advice.*" *National Association of Realtors*, 242 F.R.D. at 494 (citing *Upjohn*, 449 U.S. at 395-96) (emphasis added).

In the instant motion, Atturo argues that the emails it seeks concern underlying facts, which are not protected by the attorney-client privilege. However, the emails themselves are communications, not facts, and these communications were sent for the purpose of obtaining or conveying legal advice. Atturo does not dispute that the emails were sent by Toyo's outside counsel, Adduci, to Toyo regarding the settlement negotiations held between Toyo's outside counsel and the respondents to the ITC action (or the respondents' attorneys). The Court has reviewed the descriptions of the relevant emails, as well as the senders and recipients, and believes that Toyo has carried its burden of showing those communications are covered by the attorney-client privilege. *See Lislewood Corp. v. AT&T Corp.*, 2015 WL 1539051, at *2 (N.D. Ill. March 31, 2015). As such, the communications were transmitted for the purpose of legal advice, and this Court need not engage in an *in camera* review of those materials to reach this conclusion. *See Id.* at *3 (N.D. Ill. March 31, 2015).

If Toyo were correct that such communications were discoverable, the exception for underlying facts would swallow the rule protecting attorney-client communications. The vast majority of communications between attorneys and clients contain some mixture of fact and legal opinion. If every litigant were required to comb through every communication with its attorneys, determine which portions of those communications contained facts and which contained legal opinion, redact the portions that consisted of legal opinion, and then produce the redacted communications, civil litigation would be ground to halt. This would be the likely

5

result if Atturo's position were an accurate assessment of the law in this area; it is not.[2] Instead, the relevant inquiry is whether the documents or communications sought were transmitted for the purpose of obtaining legal advice. This Court believes that the communications Atturo seeks were transmitted for the purpose of obtaining legal advice related to the settlement of the ITC Action, and, therefore, are protected by the attorney-client privilege.

Atturo is correct that any discussions between Toyo's outside counsel and the ITC respondents' or their counsel would not be in confidence, and, therefore, not protected by the attorney-client privilege. However, the appropriate way to discover those facts would be to question a witness about those facts during a deposition.[3] Atturo attempted to do so, and was unhappy with the responses – or lack thereof – it received, but Atturo's unhappiness is not a valid reason to pierce the attorney-client privilege. Toyo could have sought an order compelling Toyo to reproduce a more knowledgeable or well prepared deponent to testify regarding the facts surrounding ITC settlements. This Court has entered similar discovery orders in this case when Toyo's 30(b)(6) witnesses provided inadequate or confusing testimony. (*See* Dkt. 228).

---

[2] The cases cited by Atturo in its reply brief are also distinguishable. In *Urban Box Office*, *Inc. v. Interfase Managers, L.P.*, 2006 WL 1004472, at *1 (S.D.N.Y. Apr. 17, 2006), the plaintiff was suing for breach of a stock purchase agreement. The defendants sought production of documents that plaintiff claimed were privileged; given the nature of the stock purchase transaction, the fundamental inquiry the court grappled with was whether the communications were conveying business information or legal opinions. *See id.* at *6 ("This was obviously a business transaction and, as is true of most business transactions, there were legal ramifications to the transaction which required the advice of attorneys. Nevertheless, not every communication to or from the attorneys, or copied to the attorneys, involved legal advice.") Atturo has not argued that the information being conveyed was for business purposes. Likewise, the quote that Atturo selected from *In re Universal Service Fund Telephone Billing Practices Litig.*, 232 F.R.D. 669, 675 (D. Kan. 2005), comes from a paragraph wherein the court was explaining that communications are not privileged where a client "chose to channel the work through an attorney rather than perform the work with non-legal personnel" or "an attorney is merely acting as a conduit for information." That is not the case here either; Toyo's attorneys needed to be take the lead in settlement negotiations with the ITC respondents and had the best understanding of the issues surrounding those negotiations. They were not mere conduits for this information.

[3] It need not necessarily be Toyo's 30(b)(6) witness, either. Atturo could have issued third-party subpoenas to any person with knowledge of the ITC negotiations, including Toyo's former outside counsel and any of the ITC respondents.

However, the Court believes that Atturo's current motion overreaches the bounds of appropriate discovery and that the emails in question are protected by the attorney-client privilege.[4]

## CONCLUSION

For the foregoing reasons, the Court denies the Motion to Compel Production of Documents Concerning Non-Privileged Settlement Discussions [303] filed by Defendant Atturo Tire Corporation ("Atturo"). The Court denies the motion with prejudice to the extent it seeks the production of the documents listed in Exhibit A to Atturo's motion. The Court denies the motion without prejudice to the extent it seeks Atturo's attorneys' fees and costs. Atturo may choose to re-file a motion seeking sanctions associated with its successful February 2016 motion to compel (Dkt. 279, 283), but the Court will not grant Atturo attorneys' fees incurred in filing the instant motion. Any subsequent motion for sanctions should include an affidavit detailing any fees and costs Atturo seeks as sanctions.

**ENTER:**

**DATED:** June 3, 2016

Susan E. Cox, U.S. Magistrate Judge

---

[4] Because the Court finds that the documents are protected by the attorney-client privilege, it does not reach the issue of whether those documents are also protected by the work product doctrine.