IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TOYO TIRE & RUBBER CO., LTD, et al., )
                                     )
      Plaintiffs,                 )
                                       )
      v.                            )      14 C 206
                                       )
ATTURO TIRE CORPORATION, et al., )      Judge John Z. Lee
                                       )
      Defendants.               )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Toyo Tire & Rubber Co., Ltd. and Toyo Tire U.S.A. Corp. (collectively, "Toyo"), brought this action against Defendants Atturo Tire Corporation ("Atturo") and Svizz-One Corporation, Ltd., alleging in part that Atturo had infringed the trade dress on Toyo's Open Country Mountain Tires ("OPMT tires").  Now that discovery has concluded, Atturo moves for sanctions under Rule 37, contending that Toyo improperly disclosed a new definition of the trade dress at issue for the first time in its expert reports.  For the reasons that follow, Atturo's motion for sanctions [390] is granted.

## Background

Toyo filed its complaint on January 13, 2014, asserting a trade dress in "the overall appearance" of OPMT tires.  Compl. ¶ 16, ECF No. 1.  The complaint described the trade dress as

> includ[ing] fingerlike projections on the left outer edge of the tire tread that slope slightly upward toward the center of the tread, fingerlike projections on the right outer edge of the tire tread that slope slightly downward toward the

1

> center of the tread, and two rows of hook-shaped tread blocks sloped downwardly from left to right, in a back to back orientation, whose openings align with the ends of the fingerlike projections on the tread edge.

*Id.* ¶ 17. There was no visual depiction of the trade dress in the complaint.

During discovery, Atturo served Toyo with an interrogatory, requesting that Toyo "[i]dentify and describe any and all alleged trade dress of the Open Country M/T, including an identification and description of any and all alleged trade dress asserted in this Action, including whether each alleged trade dress pertains to Toyo's product or packaging." Def.'s Mem. Supp. Mot. Sanctions ("Def.'s Mem."), Ex. A, Pl.'s Am. 2d. Supp. Resp. Def.'s 3d. Set Interr. No. 16 ("Pl.'s Am. Resp. Interr. 16") at 2, ECF No. 390-3.

Toyo's response reiterated the description of the trade dress in the complaint, although it added additional verbiage that seemed to confuse, rather than clarify, matters:

> The Open Country M/T tire is a protected by trade dress that is embodied in its distinctive tread design. As set forth in paragraph 18 of Toyo's Complaint, the Open Country M/T trade dress *may* be described as including fingerlike projections on the left outer edge of the tire tread that slope slightly upward toward the center of the tread, fingerlike projections on the right outer edge of the tire tread that slope slightly downward toward the center of the tread, and two rows of hook-shaped tread blocks sloped downwardly from left to right, in a back to back orientation, whose openings align with the ends of the fingerlike projections on the tread edge. *The Open Country M/T trade dress may be articulated using different words that describe or characterize the appearance of this distinctive tread design.* The Open Country M/T trade dress does not include product packaging.

*Id.* (emphasis added).

Arguing that Toyo's description of its trade dress lacked "certainty," Atturo filed a motion, asking the Court to compel Toyo to identify and describe "each of the elements" of the alleged trade dress in the OPMT tire. Def.'s Mot. Compel at 1, ECF No. 114-1; Def.'s Mem. Supp. Mot. Compel at 7, ECF No. 114-2. The motion was referred to Magistrate Judge Susan Cox, and she granted the motion, ordering Toyo "to fully answer interrogatory #16 without qualification" by December 12, 2014. Order of 12/4/2014, ECF No. 118. Judge Cox further explained to Toyo that

> at a minimum Atturo[ ] [is] entitled very specifically to know what it is you're claiming is protectable intellectual property right here. And that answer [to Interrogatory No. 16] doesn't answer the question. It's—it basically allows you wiggle room to either include more later or less. And at this point in the litigation I don't think that's appropriate.

Def.'s Mem., Ex. C, Transcript of 12/4/2014 Proceedings before Judge Cox ("12/4/2014 Tr.") at 4:19–25, ECF No. 390-5. Judge Cox also warned Toyo that they would be "stuck with [their revised] answer [to Interrogatory No. 16] because that is basically . . . the basis on which [they] brought this case." *Id.* at 5:23–6:1.

On December 12, 2014, Toyo provided a supplemental answer to Interrogatory No. 16 ("the 2014 Supplemental Answer"), summarizing the OPMT trade dress as "the 'OPMT look,' i.e., the overall visual appearance and impression conveyed by the Open Country M/T *tire tread design*." Pl.'s Am. Resp. Interr. 16 at 3 (emphasis added).[1] It went on to describe the trade dress as of December 12, 2014, as

---

[1]     In Pl.'s Am. Resp. Interr. 16 (served on October 13, 2015), Toyo includes in one location all of its prior responses to Interrogatory No. 16, including its initial answer to Interrogatory

ha[ving] center blocks and shoulder blocks. The center
blocks are hook-shaped and placed in offset, back-to-back,
double-row configurations (*see* Image A), with each block
having [ ] an opening generally adjacent to the end of a
shoulder block (*see* Image B). The shoulder blocks are
alternatingly paired on each side of the tire (*see* Image C),
and are positioned in rows on opposite sides of the tire such
that one row slopes upward toward the center blocks (*see*
Image D) and the opposite row slopes downward toward
the center blocks (*see* Image E)."

*Id.* at 4–5. The images referenced by the description are all color photographs of tires,
with the lighting illuminating the three-dimensional nature of the tires and the
varying heights of the tire tread components, including details within the grooves
between the blocks and patterns on the surface of the blocks. *See id.* at 5. Four of
the images, Images A, B, D, and E, depict a portion of a tire tread straight-on. *See
id.* The other image, Image C, shows the tire angled away from the viewer, with part
of the side of the tire visible. *See id.* Each image includes a highlighted portion of
the tread that corresponds with a portion of the written description in the 2014
Supplemental Answer. *See id.* Only the surface area of the relevant tread portions
is highlighted. *See id.*

On July 1, 2015, Atturo deposed Toyo's Rule 30(b)(6) designee, Amy Coleman,
who stated that the OPMT "tread design" consisted of "two shoulder blocks," "two
center blocks," "grooves," "stone ejectors," and "sipes."[2] Def.'s Mem., Ex. D, Coleman

---

No. 16, the 2014 Supplemental Answer (provided on December 12, 2014), and the 2015
Supplemental Answer (provided on October 2, 2015 and amended October 13, 2015).

[2]     Sipes are "thin shallow channels cut into the blocks." Def.'s Mem., App'x 1, ECF No.
390-2 (citing *Toyo Tire & Rubber Co., Ltd. v. CIA Wheel Group, et. al.,* SACV 15-0246-DOC
(DFMx), 2016 WL 4992111 at *2 (C.D. Cal. Sep. 15, 2016)). *See also Sipe,* Merriam-Webster
Online Dictionary (last accessed 7/6/2018) (defining "sipe" as "any of the small often hook-

7/1/15 Dep. at 59:16–60:9; 60:22–61:3 ECF No. 390-6.  When asked what about the "tread design" makes the tires recognizable as OPMT tires, she identified "the hook-shaped center blocks" and "the way that we've done the siping."  *Id.* at 64:21–65:5. Coleman emphasized that the siping "is a differentiator" that allows a consumer to identify it as a Toyo tire.  *Id.* at 66:11–19.

Later in Coleman's testimony, however, Toyo produced photographs of both a modified commercial OPMT tire with no sipes and a square-patterned OPMT racing tire that did not feature the hook-shaped center blocks.  Def.'s Mot. Compel. at 6–7, citing *id.,* Exs. T, U, and S, ECF Nos. 192-20–22.  Even though these depictions of OPMT tires lacked features Coleman had identified as central to OPMT tread design, Coleman stated that "all of the OPMT tires have the OPMT trade dress," Def.'s Mot. Compel, Ex. J, Coleman 7/1/15 Dep. at 16:18–19; 16:20–22, ECF No. 192-11.

After the deposition, Toyo submitted errata sheets that, Judge Cox found, attempted to revise Coleman's testimony.  Order of 9/22/2015 at 3, 3 n.1, ECF No. 228.  Judge Cox rejected these as impermissible changes to Coleman's deposition testimony.  *See id.* ("We agree with Atturo that this 'errata' sheet is more accurately described as a revision of Ms. Coleman's prior testimony and is probably impermissible under Fed. R. C. P. Rule 30(e)." (citing *Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir. 2000))).

---

shaped or bracket-shaped grooves in the tread of an automobile tire for providing extra traction and preventing skids").  Defendant's Appendix identifies the "stone ejectors" as located within the grooves between the center and shoulder blocks.  *See id.* (identifying stone ejectors by circling small raised features in the grooves in OPMT tires).

Atturo then filed a motion to compel additional discovery as to the multiple OPMT tread patterns that Coleman had stated embodied the asserted trade dress. Def.'s Mot. Compel at 2, ECF No. 192.

Judge Cox granted Toyo's motion, finding that Toyo had neglected to "point out in its discovery responses that there were models of tires marketed under the OPMT moniker which it was specifically excluding from trade dress protection." Order of 9/22/2015 at 2, ECF No. 228. Judge Cox found that the logical inference from Toyo's assertion that the trade dress was "the overall visual appearance and impression conveyed by the Open Country M/T tire tread design" was that all OPMT tires bore the protected design. *Id.* at 2.

In response to Judge Cox's order, Toyo provided a second supplemental answer to the interrogatory (the "2015 Supplemental Answer"). *See* Pl.'s Am. Resp. Interr. 16 at 6–8, "Supplemental Answer (dated October 2, 2015 and amended October 13, 2015)." In the 2015 Supplemental Answer, Toyo clarified that the racing-car tires that Coleman discussed in her deposition were not included in its trade dress theory and that "the Department of Transportation (DOT) compliant [OPMT] commercial tire tread, described and shown" in the 2014 Supplemental Answer "is the only trade dress that it asserts is infringed by Atturo's Trail Blade M/T tire tread." *Id.* at 6.

Toyo also asserted that a series of product numbers "bear the 'OPMT look'; *i.e.*, these tires have the OPMT commercial (DOT) tread pattern shown in Picture 1 of Atturo's Memorandum in Support of its Rule 37 Motion to Compel Additional Discovery on Toyo's Multiple OPMT Tread Patterns, dated July 31, 2015." The "tread

pattern" referenced, "Picture 1," was an image of a three-dimensional tire, identical to "Image B" from the 2014 Supplemental Answer.[3]

Two months later, in response to another motion by Atturo seeking a more definitive response, Judge Cox noted that Toyo had "refus[ed] to state unequivocally whether certain tires contain trade dress features and what those features are." Order of 11/20/2015 at 6, ECF No. 266. She instructed that "Atturo should be permitted to ask Toyo's corporate witness to identify which specific features on the tires meet the definition of trade dress and which do not." *Id.*

On December 11, 2015, Atturo deposed Toyo engineer Masaaki Ohara as a Rule 30(b)(6) witness.[4] Def.'s Reply Supp. Mot. Sanctions ("Def.'s Reply"), Ex. E, Ohara 12/11/2015 Dep., ECF No. 475-5. Despite Judge Cox's instruction, Ohara, on advice of counsel, refused to answer whether any specific features were part of the trade dress. *See, e.g., id.* at 63:7–24, 65:5–17. Toyo's counsel stated that Ohara could not speak to whether specific images of various Toyo tire models displayed the trade dress, despite being a 30(b)(6) witness, because Atturo had not listed any 30(b)(6)

---

[3]     In Toyo's memorandum opposing the instant motion for sanctions, it states that "Picture 1" cited in the 2015 Supplemental Answer is an image of a two-dimensional tread. *See* Pl.'s Mem. Opp. Mot. Sanctions at 5, ECF No. 390. That is incorrect. *See* Pl.'s Amended Response at 6, "Supplemental Answer (dated October 2, 2015 and amended October 13, 2015)" (citing "PICTURE 1" from Def.'s Mem. Supp. R. 37 Mot. Compel, ECF No. 192).

[4]     Ohara was also deposed in March 2015, but not pursuant to Rule 30(b)(6). *See* Pl.'s Mem., Ex. 8, Ohara 3/25/2015 Dep., ECF No. 448-9. In that deposition, Ohara defined the "surface layer" as "[i]n broad meaning, . . . the tread pattern," *id.* at 119:17–20, and explained that the "appearance" of the OPMT could be distinguished from its "performance" by separating the surface layer from the layers below it. *Id.* at 118:22–119:4.

topics in advance, and Ohara, as an engineer, could not "become a lawyer." *Id.* at 79:14–82:2.

On February 10, 2016, Judge Cox described Toyo as "unilaterally frustrat[ing] the deposition proceedings by improperly advising its witness not to answer more than one hundred different questions." Order of 2/10/2016, ECF No. 281. Judge Cox then ordered Toyo to "produce a 30(b)(6) witness to answer questions regarding which tread patterns are embodied in its asserted trade dress." *Id.* That further testimony was provided by Coleman, who confirmed in a supplemental 30(b)(6) deposition that sipes were an element of Toyo's trade dress. *See* Def.'s Mem., Ex. F, Coleman 3/3/2016 Dep. at 31:19–32:1, 45:20–23, ECF No. 390-8.

Fact discovery closed March 31, 2016. *See* Order of 12/16/2015 at 6, ECF No. 268. The parties then exchanged expert reports. Some of Toyo's experts relied on a trade dress that consisted of only the surface layer of the center and shoulder blocks, and referenced the trade dress Toyo had asserted in a California case also involving OPMT tires, *Toyo Tire & Rubber Co., Ltd. v. CIA Wheel Grp., et. al.,* SACV 15-0246-DOC (DFMx), 2016 WL 4992111 (C.D. Cal. Sep. 15, 2016). *See, e.g.,* Def.'s Mem., Ex. G, Chiagouris Report ¶ 15, ECF No. 390-9 ("I have been asked to provide an opinion on the strength of the trade dress . . . . That trade dress is the surface configuration of the OPMT tire tread as recognized by the District Court in its Summary Judgment ruling of September 15, 2016 in the California case against CIA Wheel Group et al.); *id.,* Ex. G, Patrick Report ¶ 24, ECF No. 390-9 (excerpting the summary judgment ruling in *Toyo v. CIA Wheel Group* to justify that the trade dress was limited to only the surface layer of the blocks).

After receiving Toyo's experts' reports, Atturo expressed concern to Toyo that Toyo had now changed its asserted trade dress. Def.'s Mem. at 10, ECF No. 390-1. In response, Toyo's counsel stated that it would assert as the trade dress only the "2D surface configuration of the center and shoulder blocks." Def.'s Mem., Ex. I, Robinson 9/17/2017 Email at 1, ECF No. 390-11. Atturo then filed this motion for sanctions.

## Legal Standard

Under Federal Rule of Civil Procedure 26(e), a party who has previously responded to an interrogatory "must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). If a party fails to timely supplement its disclosure or response as required under Rule 26(e), the Court must exclude the supplemented or corrected information "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003). District courts have broad discretion in determining whether a Rule 26(e) violation is justified or harmless. *Keach v. U.S. Tr. Co.*, 419 F.3d 626, 640 (7th Cir. 2005).

Federal Rule of Civil Procedure 37(b)(2)(A) dictates that "if a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders," including "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action," or "prohibiting the disobedient party from supporting or opposing designated claims or

defenses, or from introducing designated matters in evidence." Rule 37(b)(2)(C) also authorizes a judge to "order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure [to obey a discovery order], unless the failure was substantially justified or other circumstances make an award of expenses unjust." "[A] formal, written order to comply with discovery requests is not required under Rule 37(b); an oral directive from the district court provides a sufficient basis for Rule 37(b)(2) sanctions if it unequivocally directs the party to provide the requested discovery." *Halas v. Consumer Servs., Inc.*, 16 F.3d 161, 164 (7th Cir. 1994).

"A district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose." *Caterpillar*, 324 F.3d at 857 (citation omitted). However, in making this determination, the district court should consider and weigh the following factors: (1) the extent of prejudice or surprise to the aggrieved party; (2) the ability of that party to cure the prejudice; (3) the extent of disruption at trial; and (4) the presence (or lack thereof) of bad faith or willfulness in not disclosing the pertinent information at an earlier date. *See id.*; *see also Bronk v. Ineichen,* 54 F.3d 425, 428 (7th Cir. 1995) (citing *Spray–Rite Serv. Corp. v. Monsanto Co.,* 684 F.2d 1226, 1245 (7th Cir. 1982)).

Under Rule 37, "a showing of willfulness, bad faith, or fault is necessary only when dismissal or default is imposed as a discovery sanction." *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 642 (7th Cir. 2011). A party's degree of fault for its disobedience "determines only which sanctions the court should impose and not whether any sanctions are appropriate at all." *Tamari v. Bache & Co. (Lebanon)*

*S.A.L.*, 729 F.2d 469, 473 (7th Cir. 1984). Even negligence is a degree of fault sufficient for imposing sanctions. *e360 Insight*, 658 F.3d at 642–43.

<u>Analysis</u>

Atturo moves for sanctions pursuant to Rule 37(b)(2), contending that Toyo violated that rule by disobeying four Court orders that instructed Toyo to clearly identify features of the asserted trade dress. Atturo also moves for sanctions pursuant to Rule 37(c)(1), on the grounds that Toyo violated Rule 26(e) by failing to supplement or correct its definition of the trade dress, instead changing its trade dress through expert reports. Def.'s Mem. at 13.

Atturo requests that the Court preclude Toyo from asserting a trade dress limited to the surface layer of the center and shoulder blocks; exclude those of Toyo's expert opinions that rely on the surface-layer-only trade dress; restrict Toyo to the asserted trade dress as disclosed during fact discovery; and require Toyo or its counsel to pay the attorneys' fees and costs incurred by Atturo in bringing this motion and other related filings and discovery. *Id.* at 15. In response, Toyo contends that it has been consistent with its definition of the asserted trade dress, that the trade dress limited to the surface layer of the blocks is supported by expert testimony, and that it complied with the four court orders and Rule 26(e). For the reasons stated below, the Court grants Atturo's motion to bar Toyo from asserting that the trade dress is limited to the two-dimensional surface layer of the tire's center and shoulder blocks.

**I.     Violation of Fed. R. Civ. P. 26(e)**

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), which prohibits trademark infringement, also protects trade dress. *Syndicate Sales, Inc. v.*

*Hampshire Paper Corp.*, 192 F.3d 633, 635–36 (7th Cir. 1999). "Trade dress refers to the total image of a product, including features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *Computer Care v. Serv. Sys. Enters., Inc.*, 982 F.2d 1063, 1067 (7th Cir. 1992) (citing *Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 935 (7th Cir.1989)) (internal quotation marks omitted). To prevail on a claim for trade dress infringement, a plaintiff must show that: "(1) its trade dress is 'inherently distinctive' or has acquired 'secondary meaning'; (2) the similarity of the defendant's trade dress to that of the plaintiff creates a 'likelihood of confusion' on the part of consumers; and (3) the plaintiff's trade dress is 'non-functional.'" *Id.* at 1067–68 (citing *Roulo*, 886 F.2d at 935).

Toyo contends that it has been consistent with its definition of the trade dress and thus has not violated Rule 26(e). Pl.'s Mem. Opp. Mot. Sanctions ("Pl.'s Mem.") at 1, ECF No. 390. According to Toyo, the 2014 Supplemental Answer—which defined the trade dress as "the overall visual appearance and impression conveyed by the [OPMT] tread design," stated that the trade dress "has center blocks and shoulder blocks," and paired that description with blue highlighting on the surfaces of those blocks—established that the trade dress exclusively encompassed the features highlighted in blue in Images A–E in the 2014 Supplemental Answer, *i.e.*, the surface layer of the center blocks and shoulder blocks. *Id.* at 2.

The Court does not agree that the 2014 Supplemental Answer established that the trade dress only included the highlighted surface layer depicted in Images A–E. Toyo introduced the trade dress with the following statement: "The Open Country M/T trade dress, i.e., "OPMT look", which is the overall visual appearance and

impression conveyed by the Open Country M/T tire tread design, *has* center blocks and shoulder blocks." Pl.'s Am. Resp. Interr. 16 at 4 (emphasis added). The use of "has" plainly implied that the blocks were *some* of the components of the trade dress, which Toyo contended was the "overall visual appearance" of the OPMT tread design. *See Have*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/have (last visited July 6, 2018) (defining "have" as "to hold, include, or contain as a part or whole"). As such, a reasonable reader of Toyo's interrogatory responses would understand that other features of the tread design depicted in the images, such as the sipes, the depth of the grooves between the blocks, or the details in the grooves, were included in the trade dress.[5]

And, indeed, Toyo's 30(b)(6) witness, Amy Coleman, testified that the tread design—whose "visual appearance and impression" is the trade dress[6]—included "grooves," "stone ejectors," and "sipes," in addition to shoulder and center blocks.[7]

---

[5]    It is also worth noting that highlighted surface area depicted in Image C was not purely two-dimensional, as it included the scalloped edges of the shoulder blocks, which were lower than the top-most surface area of the blocks. *See* Def.'s Reply at 4, ECF No. 475; Pl.'s Am. Resp. Interr. 16 at 5.

[6]    Toyo contends that Coleman was not designated as a 30(b)(6) witness on the OPMT trade dress. But Schedule A of Atturo's Third Amended Notice of Rule 30(b)(6) Deposition to Toyo, which sets forth the topics for the July 1, 2015, Rule 30(b)(6) deposition, includes "the alleged secondary meaning, distinctiveness and recognizability of the alleged OPMT trade dress, including but not limited to the differences and similarities between the Open Country M/T tire, and elements thereof, and other tires." Pl.'s Mem., Ex. 11 at 4, ECF No. 448-12.

[7]    According to Toyo, Coleman's July 1, 2015, testimony is not relevant to trade dress because Atturo only asked Coleman about the "various elements of the OPMT *tread*, as opposed to the OPMT *Trade Dress*." Pl.'s Mem. at 9 (citing Coleman 7/1/2015 Dep. at 60:4–9) (emphasis added). This is a mischaracterization of the record. In fact, Atturo's counsel asked Coleman not about the OPMT *tread*, but about the OPMT *tread design*. *See* Def.'s Mot., Ex. D, Coleman 7/1/15 Dep. at 59:9–60:20. And, it was Toyo itself that equated the "Open Country M/T trade dress" with the "Open Country M/T tire *tread design*" in its

Coleman 7/1/15 Dep. at 59:16–60:9; 60:22–61:3.  *See also* Coleman 3/3/16 Dep. at 31:24–32:1 (confirming that "siping is part of the alleged trade dress").  And while Toyo argues that, because the 2014 Supplemental Answer did not mention sipes or stone ejectors, it is disingenuous for Atturo to assert that those features are part of the asserted trade dress, Pl.'s Mem. at 3, especially given that sipes are only visible on un-used tread blocks, *id.* (citing *id.,* Ex. 4, Rindfleisch Report ¶ 88),[8] Toyo's 2014 Supplemental Answer defines the trade dress as "the overall appearance and impression conveyed by the [OPMT] tire tread design," and does not exclude these features, which are clearly visible in the accompanying images.

Toyo further argues that "overall visual appearance and impression conveyed by" the trade dress depends on consumer interpretation, and that consumers only perceive the surface layer of the tires.  Pl.'s Mem. at 6 n.2.  In support of this argument, Toyo cites to its consumer expert, Larry Chiagouris, who contends that consumers only perceive a two-dimensional version of the three-dimensional tires,[9]

interrogatory responses.  *See* Pl.'s Am. Resp. Interr. 16 at 3 ("The Open Country M/T tire is a protected by trade dress that is embodied in its distinctive tread design.").

[8] Relatedly, Toyo asserts that Aric Rindfleisch, Atturo's secondary meaning expert, declined to code the sipes in OPMT tires as part of his secondary meaning analysis, but the citation given is not supportive of that assertion.  Pl.'s Mem. at 3 (citing *id.,* Ex. 3, Rindfleisch Dep. at 124:25–126:1, ECF No. 448-4).  Instead, Rindfleisch identified the OPMT tread block as distinct from the Atturo tire at issue in part on the basis of the siping in the OPMT.  *See* Def.'s Reply, Rindfleisch Report ¶ 263, ECF No. 475-10.

[9] Toyo also contends that "the tread blocks appear two dimensional in pictures, advertisements and even when a customer stands back and looks at the tire." Pl.'s Mem. at 7.  In support, Toyo excerpts a series of OPMT print advertisements.  But all of images depict three-dimensional tires in which three-dimensional features, such as the depth of the grooves, are clearly visible.  *See id.* at 11–12.

dominated by the center and shoulder blocks, and "don't go into the grooves." *Id.* at 6 (citing *id.,* Ex. 8, Chiagouris Dep. at 48:22–23, ECF No. 448-8). Because consumers perceive only the surface layer of the blocks, Toyo's theory goes, the "overall visual appearance and impression conveyed by" the tread consists of only the surface layer of the blocks.

In Toyo's eyes, this conclusion is obvious. But the Court is left wondering why, if Toyo always perceived of the trade dress as consisting of only the surface layer of the blocks, it did not simply claim this from the start (or, at least, during the pendency of fact discovery). As Judge Cox stated in December 2014, Atturo was entitled, "at a minimum . . . to know what it is [Toyo is] claiming is protectable intellectual property." 12/4/2014 Tr. at 4:19–25. At no point did Toyo explain its position that the trade dress at issue in this litigation is limited solely to the surface layer of the blocks, even though the use of the term "block" connotes a three-dimensional object, as acknowledged by Toyo's expert on tire functionality, Charles Patrick. *See* Def.'s Reply, Ex. C, Patrick Dep. at 123:10–16, ECF No. 475-3. *See also Block*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/block (last visited July 23, 2018) (defining "block" as "a compact usually solid piece of substantial material especially when worked or altered to serve a particular purpose"). Moreover, Toyo's own 30(b)(6) witness testified that siping—a feature that Toyo contends is not included in the "surface layer" of the blocks—was in fact a feature that made the tires recognizable as OPMT tires to consumers. Coleman Dep. at 64:21–65:5, 66:11–19.

Toyo also contends that it communicated the two-dimensional aspects of the trade dress through the testimony of Toyo engineer Masaaki Ohara. Pl.'s Mem. at 1,

7–8. According to Toyo, Ohara "confirmed" the two-dimensional characterization of the trade dress on March 25, 2015, when Ohara defined the "surface layer" as "[i]n broad meaning, . . . the tread pattern," *id.*, Ex. 8, Ohara 3/25/2015 Dep. at 119:17–20, ECF No. 448-9, and explained that the "appearance" of the OPMT could be distinguished from its "performance" by separating the surface layer from the layers below it, *id.* at 118:22–119:4. But it is far from clear how these statements served to limit the scope of the trade dress to the surface area of the blocks, and in any event, this was an individual deposition, not one under Rule 30(b)(6) binding upon the company.

Finally, as to any argument by Toyo that the trade dress in this case is limited to the surface layer of the blocks because another federal district court determined that Toyo's OPMT trade dress was so limited, *see Toyo Tire & Rubber Co., Ltd. v. CIA Wheel Grp., et. al.,* SACV 15-0246-DOC (DFMx), 2016 WL 4992111 (C.D. Cal. Sep. 15, 2016), the determination by the district judge in California has little bearing on how Toyo described the relevant trade dress during the discovery period in this case.

The solution was simple. If Toyo intended to limit the trade dress in dispute in this case to the surface design of the blocks, it could have done so on any number of occasions. Not only could it have set forth its position in the various supplemental interrogatories, but it also could have made this position plain in the Rule 30(b)(6) depositions that were taken of its representatives. It did not. Instead, Toyo waited until it served its expert reports before it articulated its new definition of trade dress. "Discovery is not a game of hide-and-seek." *Johnson v. Cook Cty. Bureau of Health Servs.*, No. 08 C 2139, 2010 WL 893092, at *5 (N.D. Ill. Mar. 11, 2010). As Toyo

waited until after the close of fact discovery to assert a trade dress consisting of only the surface layer of the blocks, the Court finds that Toyo failed to timely supplement or correct its response to Interrogatory No. 16 to reflect its new formulation of the trade dress in violation of Rule 26(e).

## II.    Violation of Court Orders

Atturo contends that, by failing to disclose that the trade dress was limited to the surface areas of the blocks, Toyo disobeyed a number of Court orders: (1) the December 4, 2014, order to "fully" and "specifically" define the asserted trade dress in response to Interrogatory No. 16, *see* Order of 12/4/2014, ECF No. 118; (2) the September 22, 2015, order requiring Toyo to provide "a clear description" of the trade dress in response to Interrogatory #16 and in additional Rule 30(b)(6) testimony, *see* Order of 9/22/2015 at 4, 6; (3) the November 20, 2015, order instructing that Atturo "should be permitted to ask Toyo's corporate witness to identify which specific features on the [OPMT] tires meet the definition of trade dress and which do not," *see* Order of 11/20/2015 at 6, and; (4) the February 10, 2016, order requiring Toyo to identify "whether or not each of the five alternative OPMT tread patterns allegedly embodies the asserted trade dress . . . and provide testimony on whether specific features of [the Non-DOT Patterns] meet the definition of the asserted trade dress," *see* Order of 2/10/2016.

According to Toyo, it complied with each of these Court orders by providing supplemental responses to Interrogatory No. 16 in response to the December 2014 and September 2015 orders and by providing Rule 30(b)(6) witnesses in response to the February 10, 2016, order.  Pl.'s Resp. at 15.  Toyo further contends that the

17

November 20, 2015, order did not "order" Toyo to provide a corporate witness to testify as to the trade dress features, but instead just "commented" that Atturo will be permitted to ask Toyo's corporate witness about those features. *Id.*

The Court agrees that the wording of the November 20, 2015, order was not entirely unequivocal, although as Magistrate Judge Cox found, *see* Order of 2/10/16, the intention of the order was clear. But given that Judge Cox ordered Toyo to clearly articulate the trade dress at issue prior to the conclusion of fact discovery on, at least, three separate occasions (even putting aside the November 2015 order), and the limited theory now advanced by Toyo was not disclosed in any meaningful manner during that time, the Court finds that Toyo failed to comply with Magistrate Judge Cox's orders of December 4, 2014, September 22, 2015, and February 10, 2016, in violation of Rule 37(b)(2).

## III. Toyo's Violation of Court Orders and Rule 26(e) Was Not Harmless or Justified

The Court next considers whether Toyo's violations of Rule 26(e) and Magistrate Judge Cox's orders were harmless or substantially justified. *See Caterpillar*, 324 F.3d at 857. In so doing, the Court considers: (1) the extent of prejudice or surprise to the aggrieved party; (2) the ability of that party to cure the prejudice; (3) the extent of disruption at trial; and (4) the presence (or lack thereof) of bad faith or willfulness in not disclosing the pertinent information at an earlier date. *Id.*

Atturo argues that it will be substantially prejudiced if Toyo were allowed to assert its new trade dress theory, because Atturo conducted extensive discovery in

reliance upon the three-dimensional trade dress features described by Toyo's Rule 30(b)(6) witness, Amy Coleman, including the deposition of nineteen fact witnesses. Def.'s Mem. at 13–14. Atturo further contends that "the record now contains at least two trade dress definitions from which Toyo can pick and choose based on what will best advance its positions at the time." *Id.* at 14.[10]

The Court agrees and finds that allowing Toyo to assert that the trade dress at issue consists of solely the surface layer of the blocks on the tire tread would inflict undue prejudice upon Atturo. Because Toyo failed to limit the trade dress to the block surfaces during fact discovery, Atturo focused its discovery in an effort to evaluate the functionality and secondary meaning related to the trade dress as described by Toyo in its interrogatory responses and Rule 30(b)(6) testimony. *See Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1015 (7th Cir. 2005) ("To prevail on a trade dress claim, [the plaintiff] must establish that its trade dress is nonfunctional, that it has acquired secondary meaning, and that a likelihood of confusion exists" on the part of consumers. (citation omitted)). Allowing Toyo to assert the two-dimensional trade dress now would effectively allow "trial by ambush," which Rule 26(e) is intended to prevent. *Gorman v. Chi. Hous. Auth.*, No. 87 C 124, 1991 WL 10893, at *2 (N.D. Ill. Jan. 23, 1991). *See also Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., Ltd.*, No. 95 C 0673, 1996 WL 680243, at *8 (N.D. Ill. Nov. 21, 1996)

---

[10] As an example, for purposes of analyzing tire functionality, Toyo's expert analyzed only the surface layer. *See* Def.'s Mem., Ex. G, Patrick Report ¶¶ 20, 24. In contrast, for purposes of analyzing secondary meaning, Toyo's expert exposed consumers to images of an OPMT tire that included three-dimensional features. *See* Rappeport Report, App'x B, Pictures of the Tires Used in this Study, Toyo Open Country M/T, ECF No. 405-2.

(holding that "supplementing" via expert reports violates Rule 26(e)(2), as the opposing party is denied the opportunity to conduct fact discovery on the supplemented responses).

Further, the prejudice to Atturo could only be cured by reopening fact discovery, a process which began over three years ago and ended in 2016. But "[l]ate disclosure is not harmless within the meaning of Rule 37 simply because there is time to reopen discovery." *Finwall v. City of Chi.*, 239 F.R.D. 494, 501 (N.D. Ill. 2006); *see Aon Risk Serv., Inc. of Ill. v. Shetzer,* 2002 WL 1989466, at *6 (N.D. Ill. Aug. 27, 2002) (rejecting argument that late disclosure was harmless because there was time to conduct deposition before trial); *see also, e.g.*, *Rick v. Toyota Indus. Equip. Co.*, 1994 WL 484633, at *1 (N.D. Ill. Sept. 2, 1994) (rejecting that reopening of discovery is curative of prejudice). And, in any event, reopening fact discovery will result in further delay and litigation costs, all to Atturo's detriment.

Additionally, the Court finds that Toyo's failure to disclose its newly articulated trade dress during fact discovery was willful. Indeed, Judge Cox admonished Toyo several times for its failure to clearly disclose the features of the trade dress at issue. *See* 12/4/2014 Tr. at 4:19–25 (telling Toyo it was not "appropriate" to leave "wiggle room" in the trade dress definition); Order of 9/22/2015 at 2 (describing the dispute over whether multiple OPMT treads all embodied the trade dress as "entirely of [P]laintiff's making"); Order of 11/20/2015 at 6 (noting that Toyo had "refus[ed] to state unequivocally whether certain tires contain trade dress features and what those features are."); Order of 2/10/2016 (describing Toyo as "unilaterally frustrat[ing] the deposition proceedings by improperly advising its

witness not to answer more than one hundred different questions" about which features of which tread patterns were embodied in the asserted trade dress). Whether Toyo knew, at any of these points, that it intended to assert its more limited trade dress theory, or whether it was equivocating to allow itself "wiggle room" to fashion its theory later at the conclusion of fact discovery, it elected to describe the trade dress during fact discovery as it did, and now must face the consequences of that choice.

Lastly, the Court also finds Toyo's failure to disclose its two-dimensional trade dress theory during fact discovery was not substantially justified. As noted, it had numerous opportunities to do so and, in fact, was ordered to do so at least three times. For its part, Toyo does not attempt to justify its failure to disclose the trade dress, insisting only that it had disclosed the trade dress properly all along. This is incorrect.

For the reasons discussed, the Court finds that Toyo's failure to disclose the two-dimensional trade dress theory bars Toyo from asserting that the trade dress is limited to the two-dimensional surface layer of the OPMT tread. To the extent that Toyo wishes to proceed with this case, it will be restricted to the definition of trade dress that it disclosed during fact discovery, namely, "the overall visual appearance and impression conveyed by the [commercial] Open Country M/T tire tread design." Pl.'s Am. Resp. Interr. 16 at 3. Furthermore, pursuant to Rule 37(b)(2)(C), the Court finds that Toyo's failure to disclose was not substantially justified and grants Atturo's request for attorneys' fees and costs related to bringing this motion. Atturo's request for fees and costs beyond this motion is denied at this time.

## Conclusion

For the reasons stated herein, Atturo's motion for sanctions [390] is granted. The Court bars Toyo from asserting that the trade dress is the two-dimensional surface layer of the tread blocks and restricts Toyo to the trade dress disclosed during fact discovery. The Court further grants Atturo's request for attorneys' fees and costs related to bringing this motion.

**IT IS SO ORDERED.**          **ENTERED**  7/23/18

_____
**John Z. Lee**
**United States District Judge**