IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TOYO TIRE CORPORATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ATTURO TIRE CORPORATION, et al., <br><br> Defendants. | Case No. 14-cv-00206 <br><br> Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Toyo Tire Corporation and Toyo Tire U.S.A. Corp. (collectively, "Toyo"), brought this action against Defendants Atturo Tire Corporation ("Atturo") and Svizz-One Corporation Ltd. ("Svizz-One") asserting a number of claims including that Defendants infringed the trade dress on Toyo's Open Country Mountain Tires ("OPMT" tires). Atturo responded with seven counterclaims against Toyo. Toyo and Atturo have filed motions for summary judgment. This order addresses Toyo's partial motion for summary judgment [606].[1] For the reasons set forth below, Toyo's motion is denied in large part.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a

---

[1] Atturo's motion for summary judgment [619] is addressed in a concurrently entered opinion.

1

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 250 (internal quotations omitted).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (internal citation and quotations omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (*citing Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id*. (citation omitted).

When cross-motions for summary judgment are filed, the Court construes all facts and draws all reasonable inferences in favor of the party against whom the motion was filed. *Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 849 F.3d 355, 361 (7th Cir. 2017). The Court treats the motions separately. *Marcatante v. City of*

*Chi.*, 657 F.3d 433, 439 (7th Cir. 2011). *See also Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 416 (7th Cir. 2019) ("Each cross movant for summary judgment bears a respective burden to show no issue of material fact with respect to the claim.").

## BACKGROUND[2]

### I. Relevant Procedural History

Toyo initially filed this lawsuit against Atturo and Svizz-One in January 2014, bringing claims including for design patent infringement and trade dress infringement and dilution (Dkt. 1).[3] Atturo is a privately-held tire brand that offers products including a tire called the Trail Blade M/T which is the tire at issue in this case. (PSOF ¶¶4, 6). Svizz-One manufacturers Atturo's Trail Blade M/T tire. (*Id.* ¶6). Atturo responded to Toyo's complaint with seven counterclaims. (Dkt. 39).

Atturo's counterclaims arise primarily from the settlement agreements that Toyo negotiated in an action Toyo brought in August 2013 before the United States International Trade Commission (ITC) ("ITC Action"). In its ITC complaint, Toyo requested that the ITC investigate various manufacturers and distributors of foreign tires for design patent infringement. *See Toyo Tire & Rubber Co. v. Atturo Tire Corp.*, 2017 WL 1178224 (N.D. Ill. Mar. 30, 2017) (hereafter, "March 2017 Order").[4] Toyo

---

[2] The facts in this Background section are undisputed unless otherwise noted. Toyo's Rule 56.1 Statement of Facts in support of its partial motion for summary judgment (Dkt. 612) is abbreviated as "PSOF". Atturo's Rule 56.1 Responsive Statement of Facts (Dkt. 627-1) is abbreviated as "DSOF". Toyo responded to Atturo's Additional Facts at Dkt. 656.

[3] Vittore Wheel & Tire and RTM Wheel & Tire were terminated as defendants in 2014. (Dkt. 38).

[4] The Court incorporates by reference the complete background section of the March 2017 Order here.

3

did not assert any trade dress claims in the ITC action. (PSOF ¶11). Atturo was not among the named respondents, nor were any Atturo tires, including the Trail Blade M/T, listed among the allegedly infringing tires in the ITC action. (*see* March 2017 Order). Nevertheless, the named respondents agreed in their settlement agreements with Toyo not to sell the Trail Blade M/T. *Id*.

As to Toyo customer (and ITC respondent) Dunlap & Kyle (D&K) in particular, on October 7, 2013, Toyo's counsel emailed D&K counsel a draft agreement to settle the ITC Action, stating that "Toyo is aware of additional tires that it believes infringe other Toyo intellectual property not asserted in the ITC Action," and listing the Atturo Trail Blade M/T as one of those "additional tires" in the body of the agreement under "Toyo's Open Country M/T Trade Dress" and on Exhibit 4. (DSOF ¶46). From October 21, 2013 through February 20, 2014, Toyo executed ten settlement agreements with respondents to the ITC Action, including D&K ("D&K Settlement Agreement"). Each agreement stated that "Toyo is aware of additional tires that it believes infringe other Toyo intellectual property not asserted in the ITC Action," and each listed the Trail Blade M/T as one of those "additional tires" in the body of the agreements under "Toyo's Open Country M/T Trade Dress" and on Ex. 4. (*Id*. ¶47). Public versions including those statements were filed in the ITC Action from October 29, 2013 through February 27, 2014. (*Id*.).

Although the ITC was not involved in the settlement negotiations, after Toyo obtained the settlement agreements, the ITC granted Toyo's request to terminate the investigation. (*see* March 2017 Order).

**II. Remaining Claims in this Case**

The claims now remaining in this case are Toyo's claims against Atturo and Svizz-One for trade dress infringement under the Lanham Act, 15 U.S.C. § 1125(a), and violation of the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1, *et. seq*. ("IDTPA") (Dkt. 1, Cts. II & VI). (Toyo's other claims were dismissed with prejudice in 2014 and 2017 (Dkts. 26, 38, 384)). Next are Atturo's counterclaims against Toyo for tortious interference with contract and with prospective business expectancy, defamation, unfair competition, unjust enrichment, violation of the IDTPA, and violation of Section 43(a)(1)(B) of the Lanham Act. (Dkt. 39, Cts. I-VII). Toyo has moved for summary judgment on Atturo's counterclaims arguing that Atturo failed to provide sufficient evidence that it lost profits and that Toyo is not liable for defamation or any Lanham Act violation.

## ANALYSIS

**I. Evidence of lost profits**

**A. The Court will not weigh the evidence on summary judgment**

Toyo requests that the Court "grant summary judgment of no lost profits." (Dkt. 611 at 3). Toyo contends that Atturo's counterclaims require proof that the alleged wrongful conduct caused the alleged damages, and Atturo must prove lost profit damages to a reasonable degree of certainty.[5] Atturo has not met its burden, Toyo

---

[5] Toyo requests that the Court dismiss in their entirety Atturo's counterclaims that require damages as an element of the claim: tortious interference with contract and tortious interference with business expectancy. (Dkt. 654 at 19). Toyo concedes that defamation *per se* does not require proof of actual damages (though defamation *per quod* would require special damages). (*Id.*) As to unjust enrichment, Toyo argues that Atturo has not quantified Toyo's retained "benefit." (*Id.*). However a plaintiff need not show loss or damages for an

contends, because its damages expert's opinions are speculative and in conflict with deposition testimony from Toyo's customer, D&K, and from Atturo's Sales Director. In moving for summary judgment, Toyo insists that the Court need not resolve its previously-filed *Daubert* motion (Dkt. 415), which seeks to strike Atturo's damages expert Brian Daniel's report and exclude him from testifying at trial. (Dkt. 654 at 9, n. 1).[6] Instead, Toyo argues that Daniel's opinions should be considered mere speculation and the Court should rely on excerpts of testimony from two depositions to find that Atturo's lost profits theory cannot survive summary judgment.

The Court concludes that Toyo has not established the absence of a genuine issue of material fact for trial about Atturo's damages. Adopting the approach Toyo advocates would require the Court to weigh certain deposition testimony against the testimony of Atturo's expert, draw inferences in Toyo's, not Atturo's favor, and resolve conflicts in the evidence. The Court cannot do so on summary judgment. *See Viamedia,* 951 F.3d at 467; *Driveline Sys., LLC v. Arctic Cat, Inc.,* 936 F.3d 576, 579 (7th Cir. 2019) (on summary judgment, "[t]he court does not assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence.") (internal citation and quotations omitted). And as

---

unjust enrichment claim but must at least show "a connection between the detriment and the defendant's retention of the benefit." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 518–19 (7th Cir. 2011). Here, for the reasons discussed, Atturo has provided sufficient evidence of the connection between its loss of tire sales and Toyo's retention of that benefit.

[6] The Court will not question Toyo's litigation decision on this matter particularly because it is Toyo's summary judgment motion and Toyo's *Daubert* motion. *See Identiseal Corp. of Wis. v. Positive Identification Sys., Inc.*, 560 F.2d 298, 302 (7th Cir. 1977) (noting "the traditional principle that the parties, rather than the court, should determine litigation strategy.").

described below, Atturo has provided sufficient evidence of its damages to survive summary judgment.

### B. Atturo provides sufficient evidence of lost profits

Toyo is correct that under Illinois law a party must prove lost profits "with 'a reasonable degree of certainty.'" *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 633-34 (7th Cir. 2007). However, "mathematical certainty is not required" (*id.*) and "recovery may be had for prospective profits when there are any criteria by which the probable profits can be estimated with reasonable certainty." *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 118 Ill. 2d 306, 316, 515 N.E.2d 61, 66 (1987) (quotations and citation omitted).[7] In addition, as Atturo points out, Illinois law "does *not* require expressly expert testimony to prove lost profits damages." *TAS Distrib.*, 491 F.3d at 634 (emphasis added). Here, however, Atturo has submitted a 70-plus page expert report from Mr. Daniel, who has significant intellectual property valuation experience.[8] (Daniel Rep. (Dkt. 613)).

Daniel opined that "but for the alleged unlawful actions of the [Toyo], including in connection with the D&K Settlement Agreement, D&K would have likely continued to purchase the Atturo TBMT tires at the initial locations, D&K would have likely expanded Atturo TBMT tire purchases to include all D&K locations, and [] all D&K locations would have likely purchased other tires from Atturo in addition to the

---

[7] Even if a party can establish that it is entitled to damages but fails to prove the amount of those damages to a reasonable degree of certainty, it can still recover nominal damages. *See TAS Distrib.*, 491 F.3d at 632.

[8] The Court notes that Toyo's *Daubert* motion challenges Mr. Daniel's methodology and the reliability of his opinions but not his qualifications. (*see* Dkt. 415).

7

Atturo TBMT tires." (Daniel Rep. at 12). He therefore opined that Toyo's alleged unlawful actions, including in connection with the D&K Settlement Agreement, resulted in Atturo losing profits of approximately $5.8 million during the period October 2013 through December 2017. (*Id*. at 22).

In addition to Daniel's report, Atturo provides other evidence that Toyo's conduct caused it to lose profits. Dennis King, D&K's corporate representative, testified that D&K cancelled its order for Atturo's Trail Blade M/T because Atturo "was on the Exhibit 4 list" of the D&K Settlement Agreement, and if it was not for the D&K Settlement Agreement it is possible D&K would have continued to sell the Trail Blade M/T and sold other Atturo tires. DSOF ¶61. And customer J.P. Thomas's representative testified that J.P. Thomas does not currently sell Atturo tires because it "signed an agreement with Toyo that [it] would not purchase and sell Atturo tires" and there was no other reason why J.P. Thomas currently does not sell Atturo tires. *Id*. ¶ 73.

Toyo argues that testimony that it was "possible" D&K would have purchased additional Atturo tires is not enough. But "the evidence need only afford a reasonable basis for the computation of damages which, with a reasonable degree of certainty, can be traced to defendant's wrongful conduct." *TAS Distrib. Co.*, 491 F.3d at 633 (citations omitted). Drawing reasonable inferences in Atturo's favor and considering the evidence as a whole, Atturo has provided sufficient evidence to survive summary judgment that its damages can be traced to Toyo's alleged wrongful conduct.

Moreover, the case law Toyo relies on is distinguishable. Most of those cases apply the rule in Illinois that profits of a new business, or of a new product promoted by an established business, are generally too remote to be recoverable. *See TAS Distrib.*, 491 F.3d at 633; *Kinesoft Dev. Corp. v. Softbank Holdings*, 139 F. Supp. 2d 869 (N.D. Ill. 2001). But Toyo does not argue that Atturo was a new business (Atturo was established in 2009 (Dkt. 619-1 at 11)), or that the Trail Blade M/T was a new product (it had been on the market since November 2012 (DSOF ¶84)). In *Kinesoft Dev. Corp.*, 139 F. Supp. 2d 869, plaintiff was a new business, and the Court found that plaintiff could not demonstrate lost profits because its expert did not analyze a comparable company selling comparable games. *Id.* at 910.[9] Here, Atturo was an established business and was not selling a new product. Atturo's expert did not need to look beyond Atturo or its products for his analysis. He analyzed D&K's actual purchase orders to Atturo in October 2013, the fact that D&K signed dealer applications with Atturo, as well as Atturo's historical sales and financial data and identified Atturo customers similar to D&K to assess the "but-for unit sales Atturo would have made to D&K." (Daniel Rep. at 13-14).

### C. Particular damages categories Toyo seeks to exclude

Finally, Toyo argues that if the Court does not find that Atturo failed to establish lost profits, the following specific categories of Atturo's alleged damages should be

---

[9] Further, there was no damages expert at all in *TAS Distrib.*, *L.S. Heath & Son, Inc. v. AT & T Info. Sys., Inc.*, 9 F.3d 561, 575 (7th Cir. 1993) or *Minuteman Int'l, Inc. v. Critical-Vac Filtration Corp.*, 1997 WL 370204 (N.D. Ill. June 27, 1997).

9

excluded: (1) lost profits for the 740 tires that were cancelled orders; (2) lost profits on tires other than the Trail Blade M/T; and (3) delayed production of other tire sizes.

Toyo admits that before the D&K Settlement Agreement, D&K purchased 1,024 Trail Blade M/T tires from Atturo. (PSOF ¶¶20-22). Although D&K paid for 284 of those, it cancelled the remaining 740. (*Id*. ¶22). But Toyo maintains that "Atturo did not purport to quantify lost profits for the (740 tires)." (Dkt. 611, n. 3). However, Daniel began his damages calculation by noting that D&K cancelled its existing order of Trail Blade M/T tires in 2013 and only paid for a portion. (Daniel Rep. at 10-12). Exhibit 8 to his report is a table, "Summary of D&K Initial Orders - Atturo TBMT Tires." (*Id*., Exh. 8). Further, as Atturo points out, its Rule 30(b)(6) witness testified how the amounts Atturo lost from the specific orders canceled by D&K can be calculated based on adding the value of D&K's purchase orders and subtracting the amount that D&K paid for those orders. (Dkt. 627 at 15, n. 11). Toyo's argument that the Court should exclude this category of damages is not convincing.

Next, Toyo contends that the Court should exclude any alleged lost profits for tires other than the Trail Blade M/T and for alleged losses from the delayed expansion of other tire sizes. However, Atturo's expert analyzed Atturo's historical sales data and reference customers to assess the likelihood that D&K would have purchased non-Trail Blade M/T tires.[10] It was his opinion "that D&K would have likely purchased

---

[10] Daniel selected 11 "reference customers" similar to D&K and "analyzed the historical sales data for the resulting group of 11 customers ('the D&K Reference Customers') in order to determine the level of but-for unit sales Atturo would have made to D&K" (Daniel Rep. at 14). His report thoroughly describes his process for selecting these customers for this analysis.

10

other tires from Atturo in addition to the Atturo TBMT…but for the alleged unlawful actions of the Counter-Defendants, including in connection with the D&K Settlement Agreement." (Daniel Rep. at 14-15). As for other tire sizes, Toyo is correct that Daniel stated he had not "specifically quantified the harm attributable to Atturo's delay in expanding its product line and sizes," but he still analyzed this category and concluded that his "calculation of Atturo's lost profits would be understated by approximately 52 percent or approximately $3.0 million." (*Id.* at 21). Also, Atturo's Rule 30(b)(6) witness and its President, Michael Mathis, testified that "as result of Toyo's actions", Atturo has "had to pause the development of the Trail Blade M/T product range." DSOF ¶ 58.[11]

Accordingly, drawing reasonable inferences in Atturo's favor, the Court declines Toyo's invitation to find at this stage that Atturo has failed to show that it lost any profits or that those alleged losses were connected to Toyo's actions. Atturo has presented enough evidence to present these questions to the jury. Toyo's motion for partial summary judgment on that ground is denied.

**II. Defamation and Lanham Act Claims**

Toyo also requests that the Court "grant summary judgment of no defamation and no Lanham Act violation." (Dkt. 611 at 3). Toyo argues that Atturo has not identified any actionable defamatory statements because the identified statements are protected by the absolute litigation privilege, do not fall within a category of

---

[11] Toyo generally disputes this evidence and objects that it is "opinion evidence by a lay witness" and "testimony regarding ultimate issues." Dkt. 656, ¶ 19. Mathis's testimony was 30(b)(6) testimony, given under oath, on behalf of his company. Toyo's objections are not persuasive.

statements that are defamatory *per se*, and constitute non-actionable opinions. Atturo argues that Toyo made multiple defamatory statements about it and the Trail Blade M/T. The statements at issue, according to Atturo, are Toyo's statements in the ten final settlement agreements Toyo executed with ITC respondents as well as additional statements not submitted to the ITC.

### A. Absolute litigation privilege

Toyo argues that Atturo's defamation claim is barred by the absolute litigation privilege because the statements were made in the ITC settlements. "The absolute-litigation privilege immunizes certain statements and conduct by attorneys in the course of litigation." *Doe v. Williams McCarthy, LLP*, 2017 IL App (2d) 160860, ¶ 19, 92 N.E.3d 607, 612. "As an absolute privilege, the class of communications to which it applies is narrow. For the privilege to apply, the communication must bear some relationship to the proposed or 'pending litigation' and it must be in furtherance of that litigation." *Id.* (internal citations omitted). While "doubts are to be resolved in favor of finding the communication pertinent to the litigation" (*id.*), Illinois still limits the application of the litigation privilege. *Kurczaba v. Pollock*, 318 Ill. App. 3d 686, 705, 742 N.E.2d 425, 440 (1st Dist. 2000). *See also Black v. Wrigley*, 2017 WL 8186996, at *5 (N.D. Ill. Dec. 8, 2017).

Atturo maintains that Toyo waived this defense. Even if it had not, the Court agrees with Atturo that the Court's March 2017 opinion established that Toyo's conduct as to Atturo in 2013 was unrelated to the ITC proceeding. The March 2017 Order concluded:

12

- the settlement agreements were private agreements that did not require ITC approval to become effective in the first place. (*id.* at *6)
- the agreement between Toyo and the various ITC respondents with regard to Atturo was an action that was taken by the parties themselves, unrelated to the ITC proceeding. (*id.*).
- the agreements between Toyo and the ITC respondents regarding Atturo are beyond the scope of Toyo's complaint and the ITC investigation. (*id.* at *7).
- the settlement agreements that Toyo submitted to the ITC were a *fait accompli*. They did not need the approval of the ITC judge to become effective. (*id.*).

Although Judge Lee was applying the *Noerr-Pennington* doctrine and not the absolute litigation privilege, the underlying issue—the connection between Toyo's statements about Atturo and the ITC proceeding—is the same. The analysis in the March 2017 Order leads to a similar result here—Toyo cannot rely on a privilege, indeed an *absolute* privilege, to shield its statements about Atturo that were unrelated to the ITC proceeding. Toyo has not established that its statements about Atturo were related to the ITC Action or in furtherance of that action.

This finding is supported by the purpose of the absolute litigation privilege. That purpose is "to allow attorneys the utmost freedom in their efforts to secure justice for their clients [by] facilitat[ing] the free flow of information between attorneys, clients, and the court system." *Doe*, 2017 IL App (2d) 160860, ¶ 19 (internal citations and quotations omitted). Toyo's counsel was not attempting to secure justice from the ITC by making statements about Atturo. The fact that the statements were made in settlement agreements does not automatically cloak them with the privilege where those were private agreements beyond the scope of the ITC complaint and investigation that did not require any ITC approval. Indeed the purpose of the

13

privilege would not be served where it is undisputed that Atturo was not a party in the ITC Action, the Trail Blade M/T was not identified in Toyo's complaint, and there was no claim of trade dress infringement (*see* Dkt. 611 at 2, 15).[12] Thus the absolute litigation privilege does not bar Atturo's defamation claims.

### B. Defamation *per se*

Toyo asserts that Atturo has not identified a statement that is defamatory *per se*. Atturo responds that Toyo's statements qualify as defamatory *per se* because Toyo accused Atturo of unlawful conduct, directly attacked the integrity of its business conduct, and prejudiced its ability to generate business. "A defamatory statement is one that 'tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him.'" *Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 726 (7th Cir. 2004) (quoting *Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1, 9, 607 N.E.2d 201, 206 (1992)). In Illinois defamatory statements may be actionable *per se* or *per quod*. *Id.* There are four categories of statements considered to be defamatory *per se:* "(1) words that impute the commission of a crime; (2) words that impute infection with a loathsome disease; (3) words that impute an inability to perform or a want of integrity in the

---

[12] Judge Lee's critique of Toyo's conduct further underscores why the purpose of the litigation privilege would not be served in this case: "Toyo's efforts to shoehorn whatever claims it may have with respect to the Atturo tires into the ITC proceeding (when it could have, but did not, list them in its ITC complaint) under the guise of motions to terminate 'conceals an attempt to interfere directly with the business relationships of a competitor' by using the ITC proceeding as an 'anticompetitive weapon,' thereby constituting a 'sham' ineligible for *Noerr-Pennington* protection." March 2017 Order at *6.

14

discharge of duties of office or employment; or (4) words that prejudice a party, or impute lack of ability, in his or her trade, profession, or business." *Id.*

Atturo argues that it has identified statements that are defamatory *per se:* first, those that were in the ten settlement agreements that were executed between October 2013 and February 2014 stating that "Toyo is aware of additional tires that it believes infringe other Toyo intellectual property not asserted in the ITC Action," and listing the Atturo TBMT as one of those "additional tires" in the body of the agreements under "Toyo's Open Country M/T Trade Dress" and on Ex. 4. These same statements appeared in subsequent agreements with Doublestar Tyre and J.P. Thomas. Atturo also points to a March 2015 letter from Toyo to Atturo's marketing partner The Off-Road Champions ("TORC") (Dkt. 627 at 23-24).[13]

Atturo's identified statements fall into the category of "words that prejudice a party, or impute lack of ability, in his or her trade, profession, or business." The Court is not persuaded by Toyo's contention that that defamation claims cannot be based on claims of intellectual property infringement alone. (Dkt. 654 at 33). *See Republic Tobacco Co.*, 381 F.3d at 728-29 (statement that patent-trademark had been violated, even with prefatory language, was defamatory); *see also Nvidia Corp. v. Fed. Ins. Co.*, 2005 WL 2230190, at *12 (N.D. Ill. Sept. 6, 2005) ("Illinois caselaw teaches that

---

[13] Toyo argues in its reply brief that some of the statements Atturo identifies were not originally specifically identified in Atturo's Counterclaim for defamation. The Court is not convinced. *See Rivera v. Allstate Ins. Co.*, 140 F. Supp. 3d 722, 728 (N.D. Ill. 2015) ("it cannot be that a defamation plaintiff at summary judgment or trial is limited to the allegedly defamatory statements recited in the complaint.").

15

allegations that a company is infringing the intellectual property rights of another entity can state viable claims for defamation.").

Toyo also argues these statements in the ITC settlement agreements are not actionable because they are statements of opinion. One defense to liability for a defamatory statement is if the statement is one of opinion: "a statement that does not contain any verifiable facts (as some call, 'an opinion') is not actionable under Illinois law." *Republic Tobacco Co.*, 381 F.3d at 727. However, "a statement of fact is not shielded from an action for defamation by being prefaced with the words 'in my opinion,' but if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable." *Id.* (citations omitted). "Context is key, as it matters not only what was said, but who said it, where it was said, and the broader setting of the challenged statements." *Bd. of Forensic Document Examiners, Inc. v. Am. Bar Ass'n*, 922 F.3d 827, 832 (7th Cir. 2019).

Here, the context was clear: most of these statements were made in binding settlement agreements between Toyo and a respondent that Toyo had accused of infringement in the ITC Action. The agreement stated that there were additional tires Toyo believed infringed "other Toyo intellectual property not asserted in the ITC Action." (*see* D&K Settlement Agreement (Dkt. 39-10)). Then under a heading "Toyo's Open Country M/T Trade Dress," Toyo listed Atturo's Trail Blade M/T. The agreement prohibited the respondents from ever selling the Trail Blade M/T. (*Id.*,

16

Sec. 1.6). Exhibit 3 to the agreement was labeled "Toyo's Intellectual Property," under which Toyo listed "Open Country MT Trade Dress." And Exhibit 4 listed "Tires" including the Trail Blade M/T, which the respondent was prohibited from selling.

To argue the statements were not defamatory, Toyo focuses on the words that it was "*aware of* additional tires that it *believes* infringe…" Atturo maintains that couching the statements in that way did not dispel the factual implications. The Court agrees especially in light of the context of the statements. *See Republic Tobacco Co.*, 381 F.3d at 729 ("Prefatory language does not control whether these statements are actionable as defamation; what matters is whether the assertions included in the three disputed sentences are verifiably false."). Toyo's statements were made in a legally binding settlement agreement related to the ITC Action that became public documents. The statements were precise and involved verifiable facts including whether Toyo owned protectable trade dress rights in the Open Country M/T and whether the Trail Blade M/T infringed those rights.

Toyo relies on *Bd. of Forensic Document Examiners*, 922 F.3d 827, but the statements at issue in that case were made in a scholarly article, were qualified by the author setting forth the subjective nature of his article, that lead the Seventh Circuit to affirm that the article could not reasonably be interpreted as stating facts. Instead the Court stressed that the appropriate avenue for defendants to express "a contrary point of view was through a rebuttal article, not a defamation lawsuit." *Id.* at 833. Here there was no avenue for Atturo to "rebut" Toyo's identification of its tire as an infringing product in a binding settlement between Toyo and another party.

17

Once signed, the agreement forever prohibited the respondents from selling the Trail Blade M/T.

In light of the statements and their context, the Court cannot find as a matter of law that the statements at issue are not defamatory, with one exception. The Court agrees with Toyo that the TORC letter is not actionable. The letter stated in part that "[w]e [Toyo] believe that Atturo has joined TORC for the purpose of legitimizing its Atturo Trail Blade M/T and that the 'story' Atturo wants to tell is a false one. Accordingly, TORC should proceed carefully relative to your announced partnership." Unlike the settlement agreement statements, this statement is vague and does not purport to assert verifiable facts, was not made to an Atturo customer and was contained in a letter, not a binding settlement agreement.

Because the Lanham Act, like Illinois defamation law, prohibits misrepresentations of fact (*see Bd. of Forensic Document*, 922 F.3d at 833) the same analysis above applies. Therefore Toyo's motion for summary judgment on Atturo's defamation and Lanham Act claims is denied in large part and granted in part only as to the TORC letter. All of the alleged defamatory statements survive summary judgment except for the TORC letter.

## CONCLUSION

For the stated reasons, Toyo's partial motion for summary judgment [606] is denied in large part.

E N T E R:

Dated: February 9, 2021

MARY M. ROWLAND
United States District Judge