## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

TOYO TIRE CORPORATION, et al.,

Plaintiffs,

v.

ATTURO TIRE CORPORATION, et al.,

Defendants.

Case No. 14-cv-00206

Judge Mary M. Rowland

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs Toyo Tire Corporation and Toyo Tire U.S.A. Corp. (collectively, "Toyo"), brought this action against Defendants Atturo Tire Corporation ("Atturo") and Svizz-One Corporation Ltd. ("Svizz-One") asserting a number of claims including that Defendants infringed the trade dress on Toyo's Open Country Mountain Tires ("OPMT" tires). The allegedly infringing tire is Atturo's Trail Blade M/T. Atturo responded with seven counterclaims. Toyo and Atturo have both filed motions for summary judgment.

Atturo moves for summary judgment on the issues of trade dress functionality, secondary meaning, and likelihood of confusion. Atturo requests a finding that it is not liable for trade dress infringement under the Lanham Act or for violation of the Illinois Deceptive Trade Practices Act. For the reasons stated below, Atturo's motion [619] is granted.[1]

---

[1] Toyo's summary judgment motion [606] is addressed in a concurrently issued opinion.

1

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 250 (internal quotations omitted).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (internal citation and quotations omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (*citing Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in

2

support of and opposition to the motion for summary judgment." *Id.* (citation omitted).

When cross-motions for summary judgment are filed, the Court construes all facts and draws all reasonable inferences in favor of the party against whom the motion was filed. *Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 849 F.3d 355, 361 (7th Cir. 2017). The Court treats the motions separately. *Marcatante v. City of Chi.*, 657 F.3d 433, 439 (7th Cir. 2011). *See also Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 416 (7th Cir. 2019) ("Each cross movant for summary judgment bears a respective burden to show no issue of material fact with respect to the claim.").

## BACKGROUND[2]

### I. Relevant Procedural History

Toyo filed this lawsuit against Atturo and Svizz-One in January 2014, alleging design patent infringement and trade dress infringement and dilution. (Dkt. 1). Atturo responded to Toyo's complaint with seven counterclaims. (Dkt. 39). Toyo's remaining claims against Atturo and Svizz-One are for trade dress infringement under the Lanham Act, 15 U.S.C. § 1125(a), and violation of the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1, *et. seq.* ("IDTPA") (Dkt. 1, Cts. II & VI). Toyo's other claims were dismissed with prejudice in 2014 and 2017. (*see* Dkts. 26, 38, 384).

---

[2] The facts cited are undisputed unless otherwise noted. Atturo's Rule 56.1 Statement of Facts in support of its motion for summary judgment as to functionality (Dkt. 619-2) is abbreviated as "DSOF Function." Atturo's Rule 56.1 Statement of Facts as to secondary meaning (Dkt. 619-3) is abbreviated as "DSOF Sec. Mean." Toyo responded to these statements of fact at Dkt. 629 and Dkt. 633 respectively. Toyo's Statement of Additional Facts ("TSAF") is at Dkt. 637. Atturo responded to Toyo's additional facts at Dkt. 652-1. The Court also incorporates by reference facts in the background section in its concurrently entered opinion ruling on Toyo's summary judgment motion.

On July 23, 2018, this Court granted Atturo's motion for sanctions, barring Toyo from asserting that the trade dress is the two-dimensional surface layer of the tread blocks.[3] (Dkt. 502). Instead the Court limited Toyo to the trade dress it had disclosed during fact discovery: "the overall visual appearance and impression conveyed by the commercial Open Country M/T tire tread design," the elements of which were "the three-dimensional shoulder blocks, center blocks, grooves, stone ejectors, and sipes of the OPMT tread." (*Id.*; DSOF Function. ¶¶5-6). The Court's sanctions order limiting Toyo to the three-dimensional version of its product design led to the Court's *Daubert* ruling excluding the opinions of Toyo experts Michael Rappeport [405], Larry Chiagouris [411], and Charles Patrick [413] who had each opined about a two-dimensional version of the trade dress. (Dkt. 564).[4]

## II. Atturo's Motion

Atturo's summary judgment motion requests that the Court find as a matter of law that (1) Toyo's asserted OPMT trade dress is functional; (2) Toyo's asserted trade dress did not acquire secondary meaning by the time Atturo began using its allegedly infringing Trail Blade M/T tire in 2012; and (3) there is not a likelihood of confusion as to the source or affiliation of Atturo's Trail Blade M/T tire. Atturo moves for

---

[3] The Court found that Toyo asserted this two-dimensional trade dress for the *first* time during expert discovery after its three-dimensional trade dress was only articulated after several court orders requiring Toyo to do so. (*See* Dkt. 502, describing the procedural history of establishing what the trade dress actually is in this case in painstaking detail).

[4] This order assumes familiarity with the Court's *Daubert* ruling. The Court also granted in part and denied in part Toyo's *Daubert* motion as to Atturo expert Aric Rindfleisch [416], denied in large part the motion as to Jeffrey Stec [417], and denied the motion as to Joseph Walter [419].

4

summary judgment on all of these elements but argues that each is dispositive on its own. (Dkt. 619-1 at 19). Toyo does not dispute that each of these elements is dispositive on its own. (Dkt. 648 at 11). However, Toyo responds that Atturo's motion should be denied because Toyo has protectable trade dress rights in its OPMT tire and Atturo infringed those rights.

## ANALYSIS

"The Lanham Act permits a civil action against any person who uses 'any word, term, name, symbol, or device' 'in connection with any goods or services' in a manner which 'is likely to cause confusion' as to the source of those goods or services." *Bodum USA, Inc. v. A Top New Casting Inc.*, 927 F.3d 486, 491 (7th Cir. 2019) (quoting 15 U.S.C. § 1125(a)(1)(A)). "As with any other trademark, infringement of a product's trade dress is actionable under the [Lanham] Act." *Id*. Trade dress is the "the design or packaging of a product that is so distinctive as to identify the manufacturer or source." *Arlington Specialties, Inc. v. Urban Aid, Inc.*, 847 F.3d 415, 418 (7th Cir. 2017). However "product design almost invariably serves purposes other than source identification." *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 213, 120 S. Ct. 1339, 1344 (2000). For that reason "[t]he Supreme Court has cautioned against overextending trade dress protection." *Flexible Steel Lacing Co. v. Conveyor Accessories, Inc.*, 955 F.3d 632, 643 (7th Cir. 2020) (discussing the different aims of trademark and patent law).[5]

---

[5] Toyo relies on *AutoZone, Inc. v. Strick*, 543 F.3d 923 (7th Cir. 2008), to argue that courts should approach summary judgment in trademark infringement cases with great caution. *AutoZone* is not instructive here because neither functionality or secondary meaning were at issue in *AutoZone*. The Seventh Circuit has stressed that the bar for functionality is "so low

A plaintiff claiming trade dress infringement must show that the trade dress is non-functional, it acquired "secondary meaning," and that the defendant is using the trade dress in a way that is likely to cause confusion as to the source of the goods. *See Minemyer v. B-Roc Representatives, Inc.*, 678 F. Supp. 2d 691, 698 (N.D. Ill. 2009). In this case Toyo claims that it owns a trade dress in "the overall visual appearance and impression conveyed by the commercial Open Country M/T tire tread design." (DSOF Function. ¶5). The elements of that asserted trade dress are the three-dimensional shoulder blocks, center blocks, grooves, stone ejectors, and sipes of the OPMT tread. (*Id.* ¶6).

## I. Functionality

"When the trade dress is unregistered (as [Toyo's] is), the party seeking protection has the burden to show it is not functional." *Arlington Specialties*, 847 F.3d at 418. A product feature is functional "if it is essential to the use or purpose of the article or if it affects the cost or quality of the article…Even if a product feature does not satisfy that definition, it can still be functional if it is a competitive necessity, that is, if its exclusive use would put competitors at a significant non-reputation-related disadvantage." *Id.* at 419 (internal citations and quotations omitted). "Functionality is a factual question, but the bar for functionality is so low that it can often be decided as a matter of law." *Id.* at 419–20 (internal citation omitted); *see also Flexible Steel*, 955 F.3d at 643.

---

that it can often be decided as a matter of law" (*Arlington Specialties*, 847 F.3d at 419-20), and in trade dress cases generally the Seventh Circuit has repeatedly reminded district courts about the Supreme Court's cautioning "against overextending trade dress protection." *Flexible Steel Lacing Co.*, 955 F.3d at 643.

Factors informing whether a trade dress is functional include: "(1) the existence of a utility patent, expired or unexpired, that involves or describes the functionality of an item's design element; (2) the utilitarian properties of the item's unpatented design elements; (3) advertising of the item that touts the utilitarian advantages of the item's design elements; (4) the dearth of, or difficulty in creating, alternative designs for the item's purpose; [and] (5) the effect of the design feature on an item's quality or cost." *Bodum*, 927 F.3d at 492 (citation omitted). Atturo argues that Toyo cannot meet its burden of proving the non-functionality of its asserted trade dress because the OPMT tread design is essential to the use and purpose of the OPMT tire and affects both the cost and quality of the tire.

### A. Utilitarian Properties of the Design

Atturo relies on testimony from Toyo's own witnesses and its unrebutted experts to establish that the elements of Toyo's tire tread design are essential to the tires' use and purpose. Specifically Atturo cites the testimony of (1) Toyo's 30(b)(6) witness, (2) two other Toyo witnesses with knowledge of the design and functionality of the OPMT tread, and (3) Atturo's unrebutted functionality expert Dr. Joseph Walter.

Toyo's Rule 30(b)(6) witness Amy Coleman[6] testified that the shoulder blocks, center blocks, and grooves of the OPMT all "provide traction." (DSOF Function. ¶¶18,

---

[6] Toyo produced Coleman, a Toyo Senior Director of Marketing, as its Rule 30(b)(6) witness on multiple topics including the "alleged lack of functionality of the alleged OPMT trade dress" and the "design and development of the Open Country M/T tire." (DSOF Function. ¶¶11-12).

23, 28).[7] She testified that OPMT's stone ejectors serve a purpose and "affect the availability of the tread design of the OPMT to provide traction." (*Id*. ¶34). Further, she understood that the OPMT's tread design with hook shape blocks gives superb traction off-road and solid performance on pavement and the open scallop shoulder blocks bite into the ground and help eject mud, snow, and rocks to maintain traction. (*Id*. ¶54). Finally Coleman testified that "every element of the tread design of the OPMT tire affects the tire's ability to provide traction," that "all" of the elements "work together to provide traction for the OPMT," and that there are no "elements of the OPMT tread design that have no effect on the OPMT tire's ability to provide traction." (*Id*. ¶41).

Drew Dayton, a Toyo USA Product Engineer and Product Manager, testified that the shape and size of the OPMT's shoulder blocks affect how the tire provides traction

[7] In a number of Toyo's responses to Atturo's functionality facts, Toyo admitted the witness gave the cited testimony but responded, for example, that "Ms. Coleman did not testify that the OPMT shoulder blocks are essential to provide the same or better traction than the OPMT. Toyo admits that Ms. Coleman was a Rule 30(b)(6) designee on certain topics, but denies that Ms. Coleman was a Rule 30(b)(6) designee on all topics. (*See, e.g.,* Atturo's Stmt. re Secondary Meaning, ¶ 13.)." (Dkt. 629, ¶18). The Court is unclear what Toyo meant in arguing that a witness did not testify that a feature of the asserted trade dress is essential to provide the same or better traction than the OPMT tire. To the extent Toyo meant that the feature is not "essential to the use or purpose of the article" that is only one part of the test and the functionality test does not require the feature to be *necessary* for the product to work or that the feature provide *better* functionality. The Court is also unclear why Toyo cites to paragraph 13 of Atturo's secondary meaning statement of facts. Toyo designated Coleman as the 30(b)(6) witness on the "alleged lack of functionality of the alleged OPMT trade dress" and the "design and development of the Open Country M/T tire." (DSOF Function. ¶¶11-12). The Court disregards Toyo's objections because they contain vague legal argument and record citations that do not support the objection. *See* Local Rule 56.1(b)(3) (requiring Toyo to specifically respond to Atturo's statements and in the case of disagreement, cite to specific references in the record and other supporting materials); *see also Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015).

on various surfaces and in various environments. (*Id*. ¶19).[8] He testified that the scalloped portion of the shoulder block improves the traction generated at the shoulder, and because of the location of the shoulder blocks, a person "can mount [the OPMT] on either side of the car in either direction." (*Id*. ¶¶20-21). As for the center blocks, Dayton testified that their shape and size affect how the tire provides traction on various surfaces and in various environments, and a "function" of "the little tapered scallops at the ends of the center hook blocks" can be to reduce irregular wear or tear. (*Id*. ¶¶24-25). He testified that the shape and size of the OPMT's grooves affect the tire's ability to provide traction in various environments. (*Id*. ¶29). In a muddy environment, the grooves provide a place for the displaced mud so the tire can "self clean" and then "grip again." (*Id*. ¶30). The "void ratio" of the OPMT tread pattern[9] provides "excellent self cleaning in mud and other loose surfaces." (*Id*. ¶32). Next, he testified, OPMT's stone ejectors help eject debris when driving in various environments. (*Id*. ¶35). Moving the stone ejectors from the groove would result in the stone ejector not "perform[ing] its intended function." (*Id*. ¶36). As for the sipes, Dayton testified that they allow the tread blocks "to flex" and "relate to the tire's ability to provide traction" and "grip." (*Id*. ¶38).

---

[8] Toyo identified Dayton as knowledgeable on multiple topics including the "[d]esign and development of [OPMT] tires which embody the OPMT Trade Dress," the alleged "[l]ack of functionality of OPMT Trade Dress," and "[a]dvertising, marketing, and promotional efforts directed to Toyo's off-road tires." (*Id*. ¶13).

[9] According to Dayton, the term "groove" refers to the "the same thing as void" and "the void ratio of a tread pattern" is "the ratio of the surface area of the tread blocks to the groove or void area." (*Id*. ¶31).

Regarding "the elements of the OPMT tread," Dayton testified "they work together to allow the tread to provide traction for the tire." (*Id*. ¶42). He testified that the OPMT tread pattern "performs many functions" and its design is a "contributing factor" to the "many, many, many" examples of on-road driving characteristics of the tire, such as "[r]ide quality, wet performance, dry performance, snow and ice performance, noise, wear life, [and] rolling resistance." (*Id*. ¶43). He further testified that the OPMT's "tread pattern affect[s]" its "on-road driving characteristics," performance, quality, and "off-road traction capabilities." (*Id*. ¶58).

Masaaki Ohara, a Toyo Tire Mold Design Engineering Manager, testified that removing the center blocks would lead to more wear and possibly more noise. (*Id*. ¶26).[10] Ohara testified that "a tread pattern design affect[s] the dry grip," "wet grip," "off-road traction," "tread life," "ride comfort," "quiet ride," and "fuel efficiency" of a tire. (*Id*. ¶57). He testified that "it is difficult to change" the OPMT tread pattern "without affecting performance whatsoever." (*Id*. ¶44).

All of this testimony, from Toyo's own witnesses, establishes that the asserted trade dress, both in its individual elements and as a whole, serves a utilitarian purpose and impacts the quality of the tire. This testimony is consistent with Atturo's *unrebutted* tire functionality expert Dr. Walter. (Walter Expert Report, Exh. 1, Dkt. 619-7). Walter opined that each of the individual elements of the alleged trade dress is utilitarian, not arbitrary. (DSOF Function. ¶16). He opined about the particular

---

[10] Toyo identified Ohara as knowledgeable on multiple topics including the "[d]esign and development of [OPMT] tires which embody the OPMT Trade Dress" and the alleged "[l]ack of functionality of OPMT Trade Dress." (*Id*. ¶15).

utilitarian functions of the shoulder blocks, center blocks, grooves, stone ejectors, and sipes. (*Id.* ¶¶17, 22, 27, 33, 37). Walter further opined that the combination of elements of Toyo's asserted trade dress is utilitarian and there is nothing arbitrary about the way each of the elements is assembled in the OPMT tread pattern. (*Id.* ¶40).

In response, Toyo argues that the "inquiry is not whether tire treads perform a function or whether aspects of the treads perform a function," and the elements of its trade dress and their combination "are not necessary for the tire" because there are alternative designs for tire treads. (Dkt. 648 at 43-45). Toyo's focus on what is "necessary for the tire" (*id.* at 45) is misplaced. The functionality test asks whether a feature "is essential to the use or purpose of the article *or* if it affects the cost or quality of the article" *or* if it is a "competitive necessity." *Arlington Specialties*, 847 F.3d at 419 (emphasis added). *See also Eco Mfg. LLC. v. Honeywell Int'l, Inc.*, 357 F.3d 649, 654–55 (7th Cir. 2003) ("*TrafFix* rejected an equation of functionality with necessity; it is enough that the design be useful.") (*citing TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 121 S. Ct. 1255 (2001)); *Jay Franco & Sons, Inc. v. Franek*, 615 F.3d 855, 857 (7th Cir. 2010) ("a design that produces a benefit other than source identification is functional."); *Specialized Seating, Inc. v. Greenwich Indus.*, *LP*, 616 F.3d 722, 727 (7th Cir. 2010) ("It looks the way it does in order to be a better chair, not in order to be a better way of identifying who made it").[11]

---

[11] "If the product feature or design is functional under the *Inwood* formulation, then the court need not proceed further to consider whether there is a non-reputation-related disadvantage." *Flexible Steel*, 955 F.3d at 644.

Toyo relies on *Bodum*, 927 F.3d 486 but that case is distinguishable. First, as to the utilitarian properties element, the Seventh Circuit found that it was reasonable for the jury to conclude that the overall look of the Chambord frenchpress was nonfunctional because plaintiff's functionality expert testified about the design elements' nonutilitarian nature, and defendant's expert *agreed. Id.* at 492-93. Thus the evidence "support[ed] that the claimed Chambord features are 'merely ornamental' and are not necessary to make the Chambord work better as a French press coffeemaker." *Id.* at 493. Here, there is *no expert testimony* rebutting Walter's opinions that the trade dress elements are functional/utilitarian.[12] That is in stark contrast to *Bodum* where both parties' experts agreed on the *non*utilitarian nature of the design elements. Here Atturo's expert (the only expert) and Toyo's own witnesses agree that the claimed OPMT tread features make the OPMT work better as a tire. Second, *Bodum* was an appeal from the denial of a post-trial motion for judgment as a matter of law, after a jury had rendered a verdict in plaintiff's favor. *See Flexible Steel*, 955 F.3d at 648, n. 62 (disagreeing with plaintiff that *Bodum* was instructive in part because it involved a different standard of review).

Toyo asserts that there is "competing evidence" about functionality. (Dkt. 648 at 43). But Toyo does not identify any evidence showing that any of its claimed trade dress features are merely "ornamental, incidental, or arbitrary." *Flexible Steel*, 955

---

[12] Toyo did not serve any rebuttal expert report to Dr. Walter's report. (DSOF Function. ¶8). As described, *supra,* the Court excluded Toyo's proffered non-functionality expert, Charles Patrick, (DSOF Function. ¶10; Dkts. 629, 564), based on sanctions imposed for Toyo attempting to revise the definition of the protected trade dress *after* the close of fact discovery. (Dkt. 502).

F.3d at 650 (citation omitted). And Toyo's argument about alternative designs is not convincing in light of all of the evidence showing the functionality of the features. The existence of alternative designs thus need not be considered. *See Arlington Specialties*, 847 F.3d at 420.

### B. Advertising

To consumers Toyo describes the OPMT as an "Off-Road Maximum Traction Tire" with a number of "features" and "benefits" and a tread design that among other things delivers "excellent off-road traction and great on-road performance." (DSOF Function. ¶¶59, 60). Atturo relies on Toyo's website advertisements going back to 2003 identifying these "features and benefits" of the tread design in terms of its grip, traction, stable ride, and performance. (*Id*. ¶¶48, 51-53). Toyo's website previously included a video identifying elements of the OPMT tread pattern and stating the "tread pattern features Toyo's attack design with open hook shaped tread blocks that span over the tire shoulder helping to eject mud, snow, and rocks while maintaining traction," the design "reduces on-road pattern noise," and the sipes "help maintain grip on wet surfaces." (*Id*. ¶62).

In 2012, Toyo released an iPad app that contained multiple statements about "features" and "performance details" of the OPMT including its "Aggressive, Attack Tread Design" that "[d]elivers excellent offroad traction and great on-road performance," and referred to the tread elements lowering noise, providing "a smooth and stable ride," and maintaining grip on wet surfaces. (*Id*. ¶63). In 2015, Toyo's "consumer facing website" identified elements of the OPMT tread pattern in blue

highlighting and linked the highlighted elements to the statements such as: "Attack tread design with hook-shaped blocks gives superb traction off-road and solid performance on pavement" and the shoulder blocks "bite into the ground and help eject mud, snow, and rocks to maintain traction." (*Id*. ¶55). In press releases, Toyo touted that OPMT's tread "optimize[s] traction," "ensures a solid grip," and "deliver[s] superior traction and handling both on and off-road." (*Id*. ¶66). Toyo's product brochures contained multiple statements including that the tread design provided "traction performance" and "stable ride." (*Id*. ¶¶69-70).

Toyo witness Dayton testified that the phrase "[a]ggressive attack tread design with hookshaped blocks" is Toyo's "way of describing the overall look of the tread design" and how it has "the performance benefit" of "all-around traction." (*Id*. ¶49). "Attack design", he said, is a marketing term Toyo uses to describe the OPMT tread pattern and to explain "how the aggressive appearance of the tire relates to attacking the – whatever surface you're driving on." (*Id*. ¶50). Thus Toyo's own witness testified that the marketing term to describe the tread design, "aggressive", specifically referred to how the tire "attack[s]" the surface—a functional benefit.[13]

In addition to this evidence are the expert reports of Walter and Rindfleisch. Walter opined that Toyo's advertising, marketing, and promotional materials discussed the advantages of the asserted OPMT trade dress in terms of performance

---

[13] Toyo's argument about the advertisements might have been more persuasive if the trade dress at issue were the two-dimensional surface layer, but the trade dress includes the "three-dimensional shoulder blocks, center blocks, grooves, stone ejectors, and sipes" and there is no dispute that the function of the shoulder blocks and center blocks and grooves is better road performance.

characteristics. (*Id*. ¶45). He opined that Toyo's print advertisements for the OPMT discussed the utilitarian advantages of the alleged trade dress and promoted the performance attributes of the tread pattern. (*Id*. ¶72). The same was true for magazine articles about the OPMT tire, some featuring information that originated with Toyo. (*Id*. ¶74). Similarly Rindfleisch opined that the advertising, marketing, and promotional materials for the OPMT tout the utilitarian advantages of Toyo's asserted trade dress. (*Id*. ¶46; *see also* Rindfleisch Expert Report, Exh. 2, Dkt. 619-8). Rindfleisch analyzed the "45 unique [OPMT] ads in Toyo's production" and opined that Toyo's print ads from 2003 to 2015 overwhelmingly promoted the performance benefits of the alleged trade dress. (*Id*. ¶71).[14]

All of this evidence shows that Toyo's advertisements touted the functionality of its asserted trade dress. *See Franek,* 615 F.3d at 859 (evidence of towel's functionality bolstered by advertisements highlighting functional aspects of towel design). In response, Toyo does not cite to any testimony but relies on two of its ads and an ad by Atturo for its Trail Blade M/T. (Dkt. 648 at 49-50). As to the latter category, Toyo cites no authority for the proposition that the Court should analyze *Atturo's* advertisements for *its* tire to determine whether Toyo's claimed trade dress is functional. Toyo otherwise asserts "many advertisements … focus on the aesthetics", but cites to only two. (Dkt. 468 at 50). But expert Rindfleisch analyzed these two ads, along with 43 others, and concluded that Toyo's ads overwhelmingly promoted the performance benefits of the tread. (DSOF Function. ¶71). Indeed the text of the first

---

[14] Toyo did not serve a rebuttal expert report to Dr. Rindfleisch's report. (*Id*. ¶9).

ad Toyo relies on states in part that "rock crawling is all about big traction and big clearance…our vice-gripping Open Country's [are] perfect for your ascent to the top." (*see* Dkt. 648 at 50). The second ad tells the consumer that OPMTs are "specially engineered to provide huge ground clearance, load-carrying capacity and off-road traction." (*Id.*).

Therefore Toyo's characterization that its ads display the "aesthetics" is belied by the text of the ads and its own witness's testimony. Toyo cannot create an issue of fact with argument in its brief where the unrebutted opinions of Atturo's two experts was that Toyo's ads promote the utilitarian and performance benefits of the tread design. *See Georgia-Pac. Consumer Prod. LP v. Kimberly-Clark Corp.*, 647 F.3d 723, 730 (7th Cir. 2011) (ads did not create genuine issue of material fact where ads linked to functional benefits).

### C. Cost and Quality

Atturo next argues that Toyo's asserted trade dress contributes to both the quality and cost of Toyo's OPMT tire. Atturo relies on expert Walter's opinion that Toyo's asserted trade dress affects the quality and cost of the OPMT tire; and the elements of the asserted trade dress, individually and in combination, impact the OPMT tire's performance, which in turn impacts the tire's quality and costs of manufacture, distribution, and ownership. (DSOF Function. ¶77). He opined that "compared to tires with asymmetrical and directional tread patterns," "the symmetrical and non-directional nature of the alleged OPMT trade dress" reduces: (1) manufacturing costs, because "[o]nly one mold, rather than two different molds, is required to manufacture

the OPMT", (2) "distribution costs because distributors only need to match up and store one set of four tires, rather than two separate sets of two tires", and (3) ownership costs "because the OPMT tire can be mounted on either side of the vehicle and rotated in several patterns," which "promotes even tread wear and longer tread life." (*Id*. ¶78). He also opined that "[t]he OPMT's alternatingly paired scalloped shoulder blocks also decrease manufacturing costs because they require less rubber than other shoulder blocks." (*Id*. ¶79). And as discussed Dayton testified that the OPMT tread pattern impacts ride quality. (*Id*. ¶¶43, 58).

With regard to quality, Toyo responds that other tires perform equally or better in certain categories of performance. However the test is not whether other tires perform better than OPMT, but "the effect of the design feature on an item's quality or cost." *Georgia-Pac*., 647 F.3d at 728. *See also Arlington*, 847 F.3d at 420 ("These different design features present alternative functional designs with different advantages and disadvantages that have nothing to do with the source of a particular product…the right question is whether the design feature affects product quality or cost or is 'merely ornamental.'"). As to cost, Toyo contends that the OPMT is not cheaper to make than other tires. Toyo relies on the declaration of Masaaki Ohara that was submitted in Toyo's litigation in California. TSAF ¶¶46-47; Dkt. 639-1.[15] Toyo submitted the Ohara declaration in a case against a different competitor, CIA,

---

[15] Toyo also cites to a portion of Dr. Walter's deposition where he was asked about the "*two-dimensional* surface configuration trade dress", which is not the trade dress in this case, and was asked about excluded expert testimony from Charles Patrick. TSAF ¶46. Toyo's reliance on these excerpts does not create a genuine issue of fact about the functionality of its asserted trade dress in this case.

in the Central District of California in August 2016 – four months after discovery closed in this case. It will not be considered here. Toyo's continued attempt to rely on the California case is improper as that case involved a different trade dress and different defendants. *See e.g.* Dkt. 502 at 16 ("the determination by the district judge in California has little bearing on how Toyo described the relevant trade dress during the discovery period in this case.").

Based on the unrebutted expert testimony that the asserted trade dress elements impact the quality and cost of the OPMT tire and the testimony of Toyo's witness, Dayton, Toyo's arguments do not create a genuine issue of fact and this factor weighs in Atturo's favor.

In sum, the Court finds that the utilitarian properties of the design, Toyo's advertising, and impact on quality and cost—establish that there is no disputed fact that the asserted trade dress is functional. The Court need not consider other factors. *See Flexible Steel*, 955 F.3d at 645, n. 44 ("Nothing in [*Georgia-Pacific*] requires a court to consider every single [functionality] factor in any given case."). The Court finds summary judgment in favor of Atturo is appropriate.

### D. Utility Patents and Alternate Designs

Although the Court need not proceed further it notes that the factor, the existence of utility patents, would favor Atturo as well. A utility patent is "strong evidence of functionality." *Flexible Steel*, 955 F.3d at 648. Expert Walter opined that the elements of Toyo's asserted OPMT trade dress are discussed in various utility patents and that existing utility patents describe the usefulness of Toyo's asserted OPMT trade dress.

(DSOF Function. ¶¶75-76). Again, there is no rebuttal to Walter's report (*Id.* ¶8). Other than broadly arguing there are "no utility patents covering [the trade dress]" (Dkt. 648 at 48), Toyo does not address the specifics of Walter's opinion or of the patents he reviewed as it relates to Toyo's asserted trade dress.[16]

Finally, because Atturo has established the functionality for all the reasons already discussed, the Court need not consider alternative designs. *See Flexible Steel*, 955 F.3d at 644 ("evidence of the availability of alternative designs fails to create a factual issue of functionality once the asserted trade dress is shown to be functional by other evidence"); *Arlington Specialties*, 847 F.3d at 419-20.

## II. Secondary Meaning

The Court will address secondary meaning even though it need not do so since functionality has been established. *TrafFix*, 532 U.S. at 33. "A secondary meaning is a link in the minds of consumers between the marked item and its source…[It] exists when consumers have come to 'uniquely associat[e]' the mark with a single maker." *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 424 (7th Cir. 2019) (internal citation omitted). A mark develops secondary meaning when its "primary significance" is "to identify the source of the product rather than the product itself." *Wal-Mart Stores*, 529 U.S. at 211 (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 102 S. Ct. 2182 (1982)).

---

[16] Toyo's other argument is that there are design patents on tire tread designs generally (and that Atturo has obtained such design patents). But Toyo does not have a design patent on the asserted trade dress in this case and Toyo does not otherwise explain how that general observation shows that its claimed trade dress is not functional. *See Georgia-Pac.*, 647 F.3d at 729 ("like a trademark, design patents do not preclude a finding of functionality"). Toyo's claim for design patent infringement was dismissed with prejudice in 2014. (Dkts. 26, 38).

Secondary meaning "can be established through direct consumer testimony, consumer surveys, length and manner of use, amount and manner of advertising, volume of sales, place in the market and proof of intentional copying." *Spraying Sys. Co. v. Delavan, Inc.*, 975 F.2d 387, 393 (7th Cir. 1992). "Consumer testimony and consumer surveys are the only direct evidence on this question...[t]he other factors are relevant in a more circumstantial fashion." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1085 (7th Cir. 1988) (citation omitted). To prove secondary meaning or lack thereof, "one of the more 'helpful' means [is] a consumer survey." *Uncommon,* 926 F.3d at 424.

As an initial matter, the Court agrees with Atturo that Toyo ignores Supreme Court precedent by arguing that it must show that its "asserted trade dress is *either* inherently distinctive *or* has acquired secondary meaning." (Dkt. 648 at 30, emphasis in original). In 2000, the U.S. Supreme Court in *Wal-Mart Stores* held that "in an action for infringement of unregistered trade dress under § 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectible, only upon a showing of secondary meaning." 529 U.S. at 216. Toyo does not dispute that its asserted trade dress is unregistered; therefore it must demonstrate secondary meaning.

Atturo argues that Toyo cannot meet its burden of proving that its asserted trade dress acquired secondary meaning by the time Atturo began using its alleging infringing tire in 2012. Atturo's expert Dr. Stec opined that "Toyo's alleged trade dress does not have secondary meaning" because his consumer survey showed that 0% of the respondents believed that Toyo's OPMT tires come from a single source.

(DSOF Sec. Mean. ¶25). *See Uncommon*, 926 F.3d at 425 (consumer recognition between 50 percent and 37 percent generally sufficient to show secondary meaning, lesser percentages are insufficient) (citation omitted). Toyo did not serve a rebuttal expert report to Stec's report, and the Court excluded Toyo's proffered secondary meaning experts. (DSOF Sec. Mean. ¶¶18-19).

Nevertheless Toyo contends that secondary meaning can be found in evidence of intentional copying by Atturo; the high volume of sales of the OPMT; evidence of OPMT's place in the market and the fact that it has been on the market over 17 years; display of the trade dress in Toyo ads and the amount of advertising; and consumer testimony. Without any consumer survey, the only other "direct" evidence Toyo could offer would be consumer testimony.

Toyo presents the following "direct evidence indicating that consumers associate the [OPMT] with a single source (Toyo)": (1) two D&K family members expressed that the Atturo Trail Blade M/T looks like a replica of the OPMT; (2) an individual on social media associated the Trail Blade M/T with Toyo (not Atturo); and (3) a consumer and an employee of Discount Tire associated the Trail Blade M/T with Toyo (not Atturo). (Dkt. 648 at 42). The May 2012 email from the two D&K family members in fact refers to a tire that is *not* an Atturo tire. (Dkt. 650). As to the other evidence, the individual social media post was made in 2015 and the Discount Tire employee's comment was from 2014. (TSAF ¶¶ 28-29). Toyo does not dispute that it must show the trade dress acquired secondary meaning by the 2012, time Atturo began using its alleging infringing tire. *See* 2 McCarthy on Trademarks and Unfair Competition §

15:4 (5th ed.). Toyo provided no affidavits from any consumers. *See Competitive Edge, Inc. v. Staples, Inc.*, 763 F. Supp. 2d 997, 1014 (N.D. Ill. 2010), aff'd, 412 F. App'x 304 (Fed. Cir. 2011).

As to Toyo's proffered circumstantial evidence of secondary meaning, it is limited and does not overcome Atturo's unrebutted consumer survey. Toyo asserts that Atturo's e-mails show intentional copying because they indicate Atturo it sought to capture the "aggressive" look of Toyo's trade dress in its own tire tread. (TSAF ¶¶ 16-20). "Copying is only evidence of secondary meaning if the defendant's intent in copying is to confuse consumers and pass off his product as the plaintiff's... copying of the 'advantages that this product enjoyed' does not support an inference that any of the copied features possessed secondary meaning." *Thomas & Betts Corp. v. Panduit Corp.*, 65 F.3d 654, 663 (7th Cir. 1995). The Court agrees with Atturo that Toyo has provided no evidence that Atturo intended to pass off its Trail Blade M/T tire as Toyo's. One of the emails relied on by Toyo refers to tire styles from two companies *other than* Toyo that Atturo was reviewing for its tire. (TSAF ¶ 16). And none of emails demonstrate any intent by Atturo to confuse consumers and pass of its product as Toyo's. *Cf. Weber-Stephen Prod. LLC v. Sears Holding Corp.*, 2015 WL 5161347, at *3 (N.D. Ill. Sept. 1, 2015) (intentional copying demonstrated in internal emails stating defendants' intent to "create[] a grill that the fit, feel and finish will make the customer think of the market share leader, Weber, but at a lower price.").

Toyo's remaining arguments are about its high volume of sales of the OPMT, place in the market and advertising.[17] These arguments cannot overcome "one of the more 'helpful'" pieces of evidence (*Uncommon*, 926 F.3d at 424)—the unrebutted consumer survey showing *0%* of respondents believed that OPMT tires came from a single source. *See id.* at 425 (even assuming manner and length of use favored plaintiff, the only direct evidence, the consumer survey, showed the majority of consumers did not associate "capsule" with one cellphone-case maker).

Because Toyo has failed to meet its burden as to non-functionality and secondary meaning, the Court will not address likelihood of confusion. *See e.g., Minemyer*, 678 F. Supp. 2d at 707. Finally, the finding that Toyo's asserted trade dress is functional means that Toyo cannot prevail on its Illinois Deceptive Trade Practices Act claim against Atturo. *See Gimix, Inc. v. JS & A Grp., Inc.,* 699 F.2d 901, 908 (7th Cir. 1983); *Flexible Steel Lacing Co. v. Conveyor Accessories, Inc.*, 2019 WL 1958697, at *9 (N.D. Ill. May 20, 2019).

## CONCLUSION

For the stated reasons, Atturo's motion for summary judgment [619] is granted on the grounds that Toyo's asserted trade dress is functional and Toyo has failed to establish secondary meaning. Toyo's Count II (Lanham Act trade dress infringement) and Count VI (IDTPA violation) are dismissed with prejudice.

---

[17] Toyo's reliance on *Illinois Tamale Co. v. El-Greg, Inc.*, 2019 WL 4395139 (N.D. Ill. Sept. 13, 2019) is not persuasive. Decided on post-trial motions following a jury trial, plaintiff's expert testified that forty-two percent of participants in the survey stated that defendant's product, Chili Cheese Puffs, was from plaintiff's company. Toyo provides no such evidence.

Judgment is entered in favor of both Defendant Atturo Tire Corporation and Defendant Svizz-One Corporation Ltd. and against Plaintiffs Toyo Tire Corporation and Toyo Tire U.S.A. Corporation on Counts II and VI.

E N T E R:

Dated: February 9, 2021

MARY M. ROWLAND
United States District Judge