IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ATTURO TIRE CORPORATION,<br><br>Counter-Plaintiff,<br><br>v.<br><br>TOYO TIRE CORPORATION, et al.,<br><br>Counter-Defendants. | Case No. 14-cv-0206<br><br>Judge Mary M. Rowland |

### MEMORANDUM OPINION AND ORDER

Toyo brought this lawsuit alleging that Defendants infringed the trade dress on Toyo's Open Country Mountain Tires. Atturo responded with seven counterclaims based on an action Toyo brought in 2013 before the United States International Trade Commission (ITC). Only the counterclaims now remain in the case.[1] Toyo moves to exclude the opinions of Atturo expert Brian Daniel. For the reasons stated below, Toyo's motion to strike [415] is granted in part and denied in part.

### LEGAL STANDARD

Under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the requirements of Federal Rule of Evidence 702 must be met before an expert can testify. The court evaluates the expert's qualifications, reliability of the methodology, and relevance of the testimony: "In performing its

---

[1] The counterclaims are for: (i) common law tortious interference with existing contracts, (ii) common law tortious interference with prospective business expectancy, (iii) common law defamation, (iv) common law unfair competition, (v) common law unjust enrichment, (vi) violation of the Illinois Deceptive Trade Practices Act, and (vii) violation of Section 43(a)(1)(B) of the Lanham Act. (Dkt. 39).

1

gatekeeper role under Rule 702 and *Daubert*, the district court must engage in a three-step analysis before admitting expert testimony. It must determine whether the witness is qualified; whether the expert's methodology is scientifically reliable; and whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue." *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017) (internal citations and quotations omitted). District courts have "significant discretion under the flexible *Daubert* inquiry." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 818 (7th Cir. 2012). The burden is on the party seeking to admit the expert to show by a preponderance of the evidence that the expert meets the requirements of Rule 702 and *Daubert*. *Gopalratnam*, 877 F.3d at 782.

Because "there are many different kinds of experts, and many different kinds of expertise, . . .the gatekeeping inquiry must be 'tied to the facts' of a particular case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150, 119 S. Ct. 1167, 1175 (1999) (quoting *Daubert*, 509 U.S. at 591). With regard to reliability, "the key to the gate is not the ultimate correctness of the expert's conclusions. Instead, it is the soundness and care with which the expert arrived at her opinion." *C.W. v. Textron, Inc.*, 807 F.3d 827, 834 (7th Cir. 2015) (internal citations and quotations omitted). While the *Daubert* inquiry focuses on principles and methodology, the "soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact, or, where appropriate, on summary judgment." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000).

# ANALYSIS

Toyo moves to exclude the opinions of Atturo damages expert Brian M. Daniel. As explained in his report (Dkt. 415-2, "Daniel Rep."), Daniel has his B.A. in Economics and MBA in Finance and Business Economics and Public Policy, and he is a Vice President in the Intellectual Property practice of Charles River Associates where since 1995 he has worked on a variety of litigation, valuation and strategy assignments. (*Id*. pp. 3, 22). Daniel "calculated Atturo's lost profits resulting from the alleged unlawful actions of the Counter-Defendants, including in connection with the D&K Settlement Agreement, in the amount of approximately $5.8 million during the period October 2013 through December 2017."[2] (*Id*. p. 4). He also stated that his "calculation of Atturo's lost profits would be understated by approximately 52 percent, or approximately $3.0 million." (*Id*. p. 21). Toyo argues that Daniel's opinions should be excluded because his methodology is flawed and unreliable because they are not based on sufficient facts and instead are based on his own judgment and unverified speculation from a principal of Atturo.

### a. Daniel's opinion that Atturo had $5.8 million in lost profits is reliable

In his report, Daniel explained that he relied on a number of materials to form his opinions. (Daniel Rep., Exh. 9). He relied on the extensive pleadings in this case,

---

[2] On summary judgment, Toyo challenged Daniel's report but also insisted the Court did not need to resolve its *Daubert* motion at that time. Thus the Court did not rule on the motion then but noted that Daniel has significant intellectual property valuation experience and provided a detailed 70-plus page expert report about Atturo's damages. (Dkt. 660, pp.7-8). Under Federal Rule of Evidence 702, an expert may be qualified "by knowledge, skill, experience, training or education." Fed. R. Evid. 702. Toyo does not challenge Daniel's qualifications. The Court has reviewed his qualifications and finds him qualified to offer opinions in this case.

multiple depositions, publicly available documents related to Toyo and Atturo tires, and tire dealer magazines. Daniel stated that "[i]n order to quantify the amount of tires D&K would have purchased from Atturo but for the alleged unlawful actions of the Counter-Defendants, including in connection with the D&K Settlement Agreement, I considered the sales history and profitability for Atturo's other customers, discussions with Michael Mathis, and industry research." (Daniel Rep. p. 13). He "reviewed Atturo's actual historical financial data for each customer and analyzed the results for a group of customers that would be most appropriate to consider in assessing the level of but-for unit sales Atturo would have made to D&K." *Id*. p. 14. He detailed his process for arriving at a group of 11 customers, "D&K Reference Customers", to determine the "but-for unit sales" Atturo would have made to D&K. *Id*. Daniel explained his calculation of sales for the D&K Reference Customers and stated that it was consistent with the deposition testimony of D&K Vice President Dennis King. *Id*. pp. 15-16. Daniel then identified additional factors that he considered in calculating the but-for sales. *Id*. pp.16-17.

Toyo does not argue that Daniel failed to employ methods of his discipline. Instead Toyo's objections are to the quality or quantity of data Daniel relied on and to the reliability of his conclusions. These are not grounds for exclusion. *See Manpower, Inc. v. Ins. Co. of Pennsylvania*, 732 F.3d 796, 807-08 (7th Cir. 2013). This is not a case of an expert relying solely on his expertise. *Cf. Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 418 (7th Cir. 2005) (expert who stated only

that he relied on his expertise "either had no method or could not describe one. He was relying on intuition, which won't do.").

Specifically, Toyo argues that the basis for Daniel's opinion that D&K would have bought any more Trail Blade M/T tires or carried the product at all of its locations is contradicted by King's testimony that it would have been impossible to know if D&K would have continued to buy the tire without accounting for other factors. Toyo also contends that Daniel did not consider what Atturo could have done to mitigate its damages. These are subjects of cross-examination. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *see also United States v. Dingwall*, 2021 WL 3238848, at *13 (7th Cir. July 30, 2021) ("the judge acting as a gatekeeper must take care not to take over the role of a jury in weighing evidence and deciding the credibility of testimony.").

Toyo also faults Daniel for relying on the speculative testimony of Atturo President Mathis to conclude that D&K would not have bought other tires from Atturo if it could not buy the Trail Blade M/T. However Daniel noted that the data showed D&K did not place orders for any non-Trail Blade M/T tire after the date of the D&K Settlement Agreement and this was *consistent with* Mathis's testimony. (Daniel Rep. p.11). Similarly Daniel performed calculations using data from his D&K Reference Customers which showed customers buying both Trail Blade M/T and non-Trail Blade M/T tires. Daniel found his data was *consistent with* Mathis's

5

and King's testimony. Arguments that Daniel should have relied on more or different information can be tested at trial. *See Manpower, Inc.*, 732 F.3d at 808 (the "reliability of data and assumptions used in applying a methodology is tested by the adversarial process and determined by the jury."); *see also Loeffel Steel Prod., Inc. v. Delta Brands, Inc.*, 372 F. Supp. 2d 1104, 1119 (N.D. Ill. 2005) ("As a general rule, questions relating to the bases and sources of an expert's opinion affect only the weight to be assigned that opinion rather than its admissibility.").[3]

### b. Toyo's Declaration by Mr. de Gyarfas

Attached to Toyo's motion is a declaration by its attorney (Dkt. 415-1). In his declaration attorney de Gyarfas states, "I directed that an analysis of Atturo's sales database, document ATC 042081, which is a large spreadsheet be conducted. The results of that analysis are that 62 of Atturo's customers did not buy TBMT tires, and 102 of Atturo's customers did buy TBMT tires." (de Gyarfas Decl. ¶3). Atturo argues this is an improper and untimely attempt to rebut Mr. Daniel's report by relying on an undisclosed "analysis" performed by its own counsel. In its reply brief, instead of responding to Atturo's argument that the Court should not consider the declaration, Toyo again relies on it and provides another declaration by de Gyarfas,

---

[3] Toyo relies on a non-binding decision from the Eastern District of Pennsylvania that barred an expert from testifying, *JMJ Enterprises, Inc. v. Via Veneto Italian Ice, Inc.*, 1998 WL 175888 (E.D. Pa. Apr. 15, 1998), aff'd, 178 F.3d 1279 (3d Cir. 1999). In that case the expert "knew very little about [plaintiff's] industry", did not review any market surveys, and "did very little to verify his sales projection." By contrast, Toyo does not argue that Daniel lacks knowledge about the tire industry. Nor does Toyo take issue with Daniel's selection of Reference Customers. Daniel specifically explained how he determined which customers would be D&K Reference Customers and the data he analyzed.

6

attaching the spreadsheet referred to in his first declaration and a "list of purchasers who did not purchase TMBT tires." (Dkt. 476-1).

The Court agrees that the de Gyarfas declarations are improper and untimely attempts to rebut Daniel's expert testimony. *See Compania Administradora de Recuperacion de Activos Administradora de Fondos de Inversion Sociedad Anonima v. Titan Int'l, Inc.*, 533 F.3d 555, 561 (7th Cir. 2008) ("Because Titan failed to disclose Taylor as an expert witness prior to the disclosure deadline, the district court did not abuse its discretion when it excluded his testimony."). Toyo's failure to respond waives any argument in response to Atturo's objection to the de Gyarfas declaration. *G & S Holdings LLC v. Cont'l Cas. Co.,* 697 F.3d 534, 538 (7th Cir. 2012); *Patrick v. City of Chicago,* 111 F. Supp. 3d 909, 913-14 (N.D. Ill. 2015). The Court will not consider these declarations.

### c. Daniel's opinion that his lost profits calculation is understated by $3 million is excluded

After calculating the $5.8 million lost profits figure, in a separate section of his report, Daniel stated that his understanding was that because of the D&K Settlement Agreement, Atturo delayed production of new tire sizes for the Atturo Trail Blade M/T until the conclusion of this litigation. (Daniel Rep. p. 20). He thus opined that his "calculation of Atturo's lost profits would be understated by approximately 52 percent, or approximately $3.0 million." (*Id.* p. 21). Toyo challenges this figure because Daniel failed to establish a link between Toyo's conduct and Atturo's decision not to manufacture other tires. Daniel's own report states that he "ha[s] *not* specifically quantified the harm attributable to Atturo's

7

delay in expanding its product line and sizes, [but] this analysis demonstrates the relative importance of the additional mud tire sizes *to Toyo*." (Daniel Rep. p. 21, emphasis added). It is not clear how his analysis of other companies' tires compared to Atturo's tire led him to conclude that Atturo's lost profits are actually $3 million more than his initial calculation. Daniel expressly admits that he did *not* quantify this particular harm to Atturo. Atturo thus has not established "a valid...connection to the pertinent inquiry." *Kumho Tire Co.*, 526 U.S. at 149. In other words, Daniel did not establish a connection between the data he relies on and the inquiry—whether the D&K Settlement Agreement caused Atturo to delay production of new tire sizes such that it lost an additional $3 million in lost profits.

Toyo's motion to bar Daniel [415] is granted in part and denied in part. His opinion that Atturo lost $5.8 million in profits is admitted, but his opinion (and related testimony) that this figure is underestimated by $3 million is barred.

## CONCLUSION

For the stated reasons, Toyo's *Daubert* motion as to Atturo expert Brian Daniel [415] is granted in part and denied in part.

E N T E R:

Dated: August 25, 2021

Mary M Rowland

MARY M. ROWLAND
United States District Judge

8