IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ATTURO TIRE CORPORATION,<br><br>Counter-Plaintiff,<br><br>v.<br><br>TOYO TIRE CORPORATION, et al.,<br><br>Counter-Defendants. | Case No. 14-cv-0206<br><br>Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Toyo brought this lawsuit alleging that Defendants infringed the trade dress on Toyo's Open Country Mountain Tires. Atturo responded with seven counterclaims based on an action Toyo brought in 2013 before the United States International Trade Commission (ITC). Only the counterclaims now remain in the case. Before the Court are two *Daubert* motions. Atturo moves to exclude the opinions of Toyo expert Larry Shatzer. Toyo moves to exclude the opinions of Atturo expert Kent Stevens. For the reasons stated below, Atturo's motion [414] is granted in part and denied in part and Toyo's motion [418] is granted in part and denied in part.[1]

## LEGAL STANDARD

Under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the requirements of Federal Rule of Evidence 702 must be met before an expert can testify. The court evaluates the expert's qualifications, reliability of the methodology, and relevance of the testimony: "In performing its gatekeeper

---

[1] As described below, the Court reserves judgment on a portion of both *Daubert* motions.

role under Rule 702 and *Daubert*, the district court must engage in a three-step analysis before admitting expert testimony. It must determine whether the witness is qualified; whether the expert's methodology is scientifically reliable; and whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue." *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017) (internal citations and quotations omitted). District courts have "significant discretion under the flexible *Daubert* inquiry." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 818 (7th Cir. 2012). The burden is on the party seeking to admit the expert to show by a preponderance of the evidence that the expert meets the requirements of Rule 702 and *Daubert. Gopalratnam*, 877 F.3d at 782.

Because "there are many different kinds of experts, and many different kinds of expertise, . . .the gatekeeping inquiry must be 'tied to the facts' of a particular case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150, 119 S. Ct. 1167, 1175 (1999) (quoting *Daubert*, 509 U.S. at 591). With regard to reliability, "the key to the gate is not the ultimate correctness of the expert's conclusions. Instead, it is the soundness and care with which the expert arrived at her opinion." *C.W. v. Textron, Inc.*, 807 F.3d 827, 834 (7th Cir. 2015) (internal citations and quotations omitted). While the *Daubert* inquiry focuses on principles and methodology, the "soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact, or, where appropriate, on summary judgment." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000).

## BACKGROUND

The following is a summary of the background relevant to the present motions.[2] In 2017, Toyo moved for summary judgment on all of Atturo's counterclaims, arguing that the counterclaims arose out of Toyo's actions before the ITC and were protected from suit by the *Noerr-Pennington* doctrine. Atturo's counterclaims are based on the provisions in settlement agreements that Toyo negotiated restricting the ITC respondents' ability to purchase and distribute Atturo's tire, the Trail Blade M/T (hereafter, "Atturo Provisions"). On March 30, 2017, the Court denied Toyo's summary judgment motion finding that its conduct was not immune under the *Noerr-Pennington* doctrine. (Dkt. 362, "*Noerr-Pennington* Order").

On February 9, 2021, the Court entered summary judgment dismissing Toyo's Count II (Lanham Act trade dress infringement) and Count VI (violation of the Illinois Deceptive Trade Practices Act (IDPTA)). (Dkt. 661). The Court ruled that Toyo's asserted trade dress is functional and Toyo failed to establish secondary meaning. Toyo had also moved for summary judgment on Atturo's counterclaims. The Court denied in large part Toyo's motion for summary judgment. (Dkt. 660). The seven counterclaims are for: (i) common law tortious interference with existing contracts, (ii) common law tortious interference with prospective business expectancy, (iii) common law defamation, (iv) common law unfair competition, (v) common law unjust enrichment, (vi) violation of the IDPTA, and (vii) violation of

---

[2] This order otherwise assumes familiarity with the long procedural history of this case filed in January 2014.

3

Section 43(a)(1)(B) of the Lanham Act. Jury trial on Atturo's counterclaims is scheduled to begin September 16, 2021.

Recently the Court granted in part and denied in part Toyo's *Daubert* motion as to Atturo damages expert Brian Daniel. (Dkt. 687).[3] The Court now addresses proposed ITC experts Shatzer and Stevens.[4]

## ANALYSIS

### I.  Larry Shatzer

Atturo moves to exclude the opinions of Toyo ITC expert Larry Shatzer. According to his report (Dkt. 414-3, "Shatzer Rep."), Shatzer is an expert in investigations before the ITC under Section 337 of the Tariff Act of 1930 (19 U.S.C. § 1337) ("Section 337"). (*Id.* ¶1). He was retained to offer an opinion on ITC standard practices and procedures in Section 337 investigations and, in particular, practices and procedures for seeking to terminate a respondent in such an investigation based on a settlement agreement. He was also retained to offer an opinion on whether the termination of certain respondents based on settlement agreements in *Certain Tires and Products Containing Same*, Inv. No. 337-TA-894 ("Tires Investigation") was consistent with

---

[3] Previously in December 2019, the Court ruled on six Daubert motions. (Dkt. 564). Atturo's motions to exclude Toyo experts Michael Rappeport, Larry Chiagouris, and Charles Patrick were granted. Toyo's motion to exclude Atturo expert Aric Rindfleisch was granted in part and denied in part; Toyo's motion as to Jeffrey Stec was denied in large part; and Toyo's motion as to Joseph Walter was denied. Atturo's motion to exclude Jeffrey Kinrich was denied as moot in light of the Court's summary judgment rulings. (Dkt. 664).

[4] Under Federal Rule of Evidence 702, an expert may be qualified "by knowledge, skill, experience, training or education." Fed. R. Evid. 702. The parties do not challenge the qualifications of Shatzer or Stevens. The Court has reviewed the experts' qualifications and finds them qualified to offer opinions in this case.

4

standard practices and procedures in Section 337 investigations. (*Id.* ¶2). Shatzer is an attorney and partner at a law firm in Washington D.C. where he represents clients in Section 337 investigations and in intellectual property cases in U.S. District Courts. (*Id.* ¶10).

Shatzer's opinions are summarized as follows:

- Toyo's inclusion in the Settlement Agreement of other issues between the parties beyond those at issue in the ITC investigation was not unusual and was consistent with custom and practice in Section 337 investigations (*Id.* ¶54).
- the ITC's decisions to terminate the Tire Investigation as to various respondents based upon settlement agreements was consistent with normal and standard practice of the ITC in Section 337 investigations (*Id.*).

Atturo seeks to exclude Shatzer's opinions, or in the alternative, if not completely excluded then Atturo asks that the Court strike particular paragraphs of his report and bar related testimony. Atturo argues that Shatzer's opinions will not help the jury understand the evidence or determine a fact in issue, are inconsistent with the Court's *Noerr-Pennington* Order, and are unreliable and prejudicial.

### a. The Court will not exclude all of Shatzer's opinions

Atturo argues that Shatzer's report and testimony should be barred because of the *Noerr-Pennington* Order. The question before the Court there was whether the *Noerr-Pennington* doctrine protected Toyo from liability on Atturo's counterclaims. In other words, whether Toyo's conduct in the ITC proceeding was immune because Toyo was petitioning the government to take certain action, or on the other hand, if its conduct was a "mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." *E. R. R. Presidents Conf. v.*

5

*Noerr Motor Freight, Inc.*, 365 U.S. 127, 144, 81 S. Ct. 523, 533, 5 L. Ed. 2d 464 (1961). The Court found that it was the latter and denied Toyo's motion for summary judgment. *Noerr-Pennington* Order, pp. 11, 17. While Toyo's conduct was a "sham vis-à-vis Atturo," the Court also stressed that "this is not to say that Toyo's complaint and the resulting ITC proceeding was a sham as a whole." *Id.*, fn. 6.[5]

The *Noerr-Pennington* Order does not mean that ITC practices and procedures are irrelevant to this case. To the contrary, the jury here will be tasked with deciding the merits of Atturo's counterclaims that all arise from Toyo's alleged wrongful conduct in resolving an ITC investigation. (*see* Dkt. 39, pp. 35-51). Atturo does not argue that ITC proceedings are "obvious to the layperson." *Ancho v. Pentek Corp.*, 157 F.3d 512, 519 (7th Cir. 1998); *see also Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 484 (7th Cir. 2020), cert. denied, No. 20-319 (U.S. June 28, 2021). Shatzer's opinions will provide needed context and information to "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; *see also Daubert*, 509 U.S. at 591.

### b. Shatzer's opinions about ITC practices and procedures and Section 337 investigations are admissible

Atturo seeks to exclude Shatzer's opinion that "the ITC's decisions to terminate the Tire Investigation as to various respondents based upon settlement agreements was consistent with normal and standard practice of the ITC in Section 337 investigations." (Shatzer Rep. ¶54). Atturo argues this opinion is not relevant to any

---

[5] The Court, in ruling on summary judgment, was not considering the admissibility of expert testimony and the expert reports now at issue were provided by the parties after that March 2017 ruling.

issue in the case because of the *Noerr-Pennington* Order. The Court does not agree for the reasons discussed, *supra*, Sec.I.a. Atturo insists that the Atturo Provisions were effective even before Toyo filed its motions to terminate with the ITC. This topic can be explored on cross-examination. *See Smith*, 215 F.3d at 718 (the "soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact.").

Atturo also seeks to exclude Shatzer's opinion that "Toyo's inclusion in the Settlement Agreement of other issues between the parties beyond those at issue in the ITC investigation was not unusual and was consistent with custom and practice in Section 337 investigations." (Shatzer Rep. ¶54). Atturo argues that this opinion is irrelevant and unreliable because it implies Toyo's conduct was proper without addressing the Atturo Provisions. This opinion is relevant and reliable. An expert's conclusions should be based on "sufficient facts or data." Fed. R. Evid. 702(b). Reliability "is determined on a case-by-case basis." *C.W.*, 807 F.3d at 835. It is a "flexible" test. *Kumho Tire Co.*, 526 U.S. at 141. *See also Smith*, 215 F.3d at 720 ("the reliability test under Rule 702 is an individualized test whose relevant factors will depend on the type of expertise at issue in a given case."); *United States v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009) ("We give the court great latitude in determining not only *how* to measure the reliability of the proposed expert testimony but also whether the testimony is, in fact, reliable.") (emphasis in original). Shatzer's opinions are based on his training and education, extensive experience with Section 337

7

investigations and his review of the ITC documents in this case as well as a number of other ITC proceedings as comparative examples. (Shatzer Rep. ¶¶4-14, Exh. A). *See Kumho Tire Co.*, 526 U.S. at 156 ("no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.").

Atturo points to Shatzer's lack of response in his deposition to questions about whether ITC settlement agreements commonly included terms that "restrain trade." (Shatzer Dep. (Dkt. 414-4, Exh. C) pp. 70, 244). But that was not the subject of Shatzer's opinion. He understandably responded that he did not have an opinion on that issue. *Id.* at pp. 244-46.

Atturo also seeks to bar testimony that ITC "ALJs carefully review each proposed settlement agreement." Shatzer Rep. ¶ 29. Shatzer says that ITC ALJs carefully review each settlement agreement as to *any respondent* and have, on occasion, denied motions to terminate when the settlement agreement is deemed not in the public interest. *Id.* He can offer this testimony.[6]

Atturo's arguments that Shatzer did not specifically address the Atturo Provisions, did not use the proper definition of intellectual property, or did not address whether third parties are usually included in ITC settlement agreements are

---

[6] Shatzer also opines that ITC Staff considered Atturo's concerns and the ALJ is presumed to have taken Atturo's concerns into account in ruling on the motions to terminate (*see id.* ¶¶41-42, 48, 53). Atturo objects to Shatzer testifying that the ITC Staff addressed Atturo's concerns in its November 2013 letter and what the ALJ is presumed to have considered. While Shatzer' testimony about what he *presumes* the ALJ considered at a minimum appears speculative, the Court reserves judgment at this time. In light of arguments raised in the motions *in limine* regarding Atturo's letter to the ITC and the ITC's consideration of same, the Court reserves judgment on whether the experts will be permitted to offer testimony on this specific topic.

8

subjects of cross-examination. *See Lapsley*, 689 F.3d at 805 (once *Daubert* threshold met, "the accuracy of the actual evidence is to be tested before the jury with the familiar tools of 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'"). It is not for this Court to decide if Shatzer is correct. *See Smith*, 215 F.3d at 719 ("It is not the trial court's role to decide whether an expert's opinion is correct. The trial court is limited to determining whether expert testimony is pertinent to an issue in the case and whether the methodology underlying that testimony is sound."); *see also Walker v. Soo Line R. Co.*, 208 F.3d 581, 589 (7th Cir. 2000) ("To the degree that [the expert] might have relied on faulty information, the matter certainly could be explored on cross-examination.").

### c. Testimony about unrelated cases

Finally, the Court strikes Paragraphs 27-28 and 30-32 that contain information about ITC proceedings involving Nokia, Apple, and other unrelated ITC investigations. Testimony about these unrelated matters would only serve to confuse the jury.

In sum, Shatzer is permitted to testify about ITC procedure and ALJ review generally, and basic factual background information about the ITC Tires Investigation. He is also permitted to testify about the opinions he summarizes in ¶ 54 of his report: (a) that inclusion in the Settlement Agreement of other issues between the parties beyond those at issue in the ITC investigation was not unusual and was consistent with custom and practice in Section 337 investigations and about the workings of the ITC; and (b) the ITC's decisions to terminate the Tire

Investigation as to various respondents based upon settlement agreements was consistent with normal and standard practice of the ITC in Section 337 investigations.

## II.     Kent Stevens

Toyo moves to exclude certain opinions of Atturo ITC expert Kent Stevens. According to his report (Dkt. 418-2, "Stevens Rep."), Stevens was retained as an expert in practice and procedure in investigations before the ITC under Section 337 and was asked to provide rebuttal opinions to Shatzer's opinions. (*Id.* ¶1). Stevens is a lawyer and formerly was a partner at a law firm representing parties in Section 337 investigations and related District Court proceedings. (*Id.* ¶17). He now has a solo mediation practice and he has been appointed by the ITC as one of nineteen Mediators on its panel of Mediators for Section 337 litigation. (*Id.* ¶19). In summary, Stevens' opinions are:

- the Shatzer Report exaggerates the scope of the ITC ALJ's review of settlement agreements in ITC investigations because the scope of the ITC's review of settlement agreements is limited (*Id.* ¶5)
- the Shatzer Report exaggerates the scope of the ALJ's review of Toyo's settlement agreements in the Tires Investigation (*Id.*)
- he disagrees with Shatzer that the "ALJ is presumed to have taken Atturo's concerns … into account in ruling" (*Id.* ¶6).

Toyo first argues that Stevens repeats facts that a jury can interpret. The Court does not agree. As explained with regard to the Shatzer Report, information about ITC practice and procedure is not an area obvious to the layperson. Stevens' opinions will provide needed context and information to "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; *see also Daubert*, 509

U.S. at 591. This is not an area a lay juror would be expected to understand without expert assistance. *Cf. Taylor v. Illinois Cent. R. Co.*, 8 F.3d 584, 585–86 (7th Cir. 1993) (expert properly excluded where the issue "boils down to whether a pile of large rocks is harder to stand on than a pile of smaller rocks…any lay juror could understand this issue without the assistance of expert testimony."). Toyo's disagreement with Stevens' characterization of how ITC practice and procedure works and his basis for concluding that the scope of review of settlement agreements is limited can be explored on cross-examination. *See Burton v. E.I. du Pont de Nemours & Co., Inc.*, 994 F.3d 791, 827 (7th Cir. 2021); *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013). And Toyo's insistence that Shatzer, not Stevens, is correct is not persuasive. *See Walker*, 208 F.3d at 589 ("That two different experts reach opposing conclusions from the same information does not render their opinions inadmissible.").

Toyo also argues that Stevens' opinions "do not draw on any specialized knowledge." (Dkt. 418 at 8). This is not a developed challenge to the reliability of Stevens' opinions. In any event the Court finds his opinions to be reliable. His opinions are based on his training and education, extensive experience with Section 337 investigations, working as an attorney for the ITC, and his review of the ITC documents in this case as well as examples and data from other ITC proceedings. (Stevens Rep. ¶¶9-22, Exhs. A-B). *See Kumho Tire Co.*, 526 U.S. at 156 (expert can draw conclusions from observations based on extensive and specialized experience).

Toyo contends that a number of Stevens' opinions are based on speculation and seeks to strike a number of paragraphs. Both experts are permitted to testify about

11

ITC procedure and ALJ review generally, and basic factual background information about the ITC Tires Investigation. And Stevens may rebut Shatzer's opinions about the scope of the investigation, e.g. ¶33. Finally, paragraphs 38, 61-62, 66-67, and 70-72, however, are about ITC proceedings involving other parties, unrelated to the ITC proceeding in this case. As discussed in relation to Shatzer's opinions, testimony about them would be confusing for the jury.[7]

In sum, Stevens is permitted to testify about ITC procedure and ALJ review generally, and basic factual background information about the ITC Tires Investigation. Stevens can also testify about his opinions in paragraph 5.

## CONCLUSION

For these reasons, Atturo's *Daubert* motion as to Shatzer [414] and Toyo's *Daubert* motion as to Stevens [418] are granted in part, denied in part and taken under advisement in part.

E N T E R:

Dated: August 26, 2021

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge

---

[7] For the same reasons discussed as to Shatzer's Report, the Court reserves judgment on testimony about the ITC's consideration of Atturo's "concerns" and Atturo's November 2013 letter, and will resolve the remaining portion of the *Daubert* motion in addressing the motions *in limine*.

12