# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ATTURO TIRE CORPORATION,

Counter-Plaintiff,

v.

TOYO TIRE CORPORATION, et al.,

Counter-Defendants.

Case No. 14-cv-0206

Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Toyo brought this lawsuit alleging that Defendant Atturo Tire Corporation infringed Toyo's Open Country Mountain Tires trade dress. Atturo responded with seven counterclaims based on an action Toyo brought in 2013 before the United States International Trade Commission (ITC). With only Atturo's counterclaims remaining, the case proceeded to a jury trial in September 2021. Before the Court are the parties' post-trial motions. For the reasons stated below, Toyo's motion for judgment or alternatively a new trial [751] is granted in part and denied in part and Atturo's motion for injunctive relief and other corrective actions [753] is denied.

## BACKGROUND

The following summarizes the background relevant to the present motions.[1] In 2016, Toyo moved for summary judgment on all of Atturo's counterclaims, arguing that the counterclaims arose out of Toyo's actions before the ITC (ITC Investigation No. 337-TA-894) and were protected from suit by the *Noerr-Pennington* doctrine.

---

[1] This order assumes familiarity with the long procedural history of this case filed in January 2014.

Atturo bases its counterclaims on provisions in settlement agreements that Toyo negotiated restricting the ITC respondents' ability to purchase and distribute Atturo's tire, the Trail Blade M/T (hereinafter, "Atturo Provisions"). On March 30, 2017, the Court denied Toyo's summary judgment motion finding that the *Noerr-Pennington* doctrine did not immunize its conduct. (Dkt. 362, "*Noerr-Pennington* Order"). The Court explained that Atturo was not among the named respondents in the ITC Action, nor were any Atturo tires listed among the allegedly infringing tires in Toyo's complaint. *Id.* On February 9, 2021, the Court entered summary judgment dismissing Toyo's claims for Lanham Act trade dress infringement and violation of the Illinois Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2 (IDTPA). (Dkt. 661). The Court ruled that Toyo's asserted trade dress is functional and Toyo failed to establish secondary meaning. The Court also denied in large part Toyo's motion for summary judgment on Atturo's counterclaims. (Dkt. 660).

The Court scheduled a jury trial on Atturo's counterclaims for September 2021. Before trial the Court ruled on three *Daubert* motions and numerous motions in limine. Trial began September 16, 2021 and the jury entered a verdict on September 22, finding in favor of Atturo on six claims and in favor of Toyo on the Lanham Act claim. (Dkts. 740, 744).[2] The jury awarded Atturo $10 million in compensatory damages and $100 million in punitive damages.

---

[2] Toyo orally moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). The Court deferred consideration of that motion pending submission of the case to the jury under Rule 50(b).

2

At issue in the post-trial motions are Atturo's counterclaims under Illinois state law for: tortious interference with contract (Count I), tortious interference with prospective business expectancy (Count II), defamation (Count III), unfair competition (Count IV), unjust enrichment (Count V), and violation of the IDTPA (Count VI).

## ANALYSIS

### *Toyo's Motion*

### I.    Absolute Litigation Privilege and *Noerr-Pennington* Doctrine

Toyo seeks judgment in its favor based on the absolute litigation privilege and *Noerr-Pennington* immunity.

### a.  Absolute Litigation Privilege

The Court finds that judgment is warranted in Toyo's favor on Counts III (defamation) and VI (IDTPA) because the Illinois absolute litigation privilege bars those claims.

The Court first briefly recounts the procedural history relevant to this defense. In March 2015, Judge Lee denied Toyo's motion to dismiss Atturo's defamation counterclaim [147]. In response to Toyo raising the absolute litigation privilege, the Judge explained that the privilege is an affirmative defense and he could not rule that the defamation claim was barred at the pleading stage.[3] In August 2020, Toyo

---

[3] The Court rejects Atturo's argument that Toyo waived this defense. Toyo raised the absolute litigation privilege in March 2014 and again on summary judgment in 2020 (*see* Dkts. 29, 606). Atturo has been on notice that Toyo was relying on this defense since the start of this litigation. *See Garofalo v. Village of Hazel Crest,* 754 F.3d 428, 436 (7th Cir. 2014) ("[T]he failure to plead an affirmative defense in the answer works a forfeiture only if the plaintiff is harmed by the defendant's delay in asserting it.") (cleaned up). In addition, Toyo raised the absolute litigation privilege in its oral Rule 50 motion (*see* Dkt. 736).

moved for partial summary judgment, in part based on the absolute litigation privilege. (Dkt. 611). Toyo argued that the Court should grant it summary judgment on Atturo's defamation counterclaim as well as its other counterclaims to the extent they stemmed from the statements in the ITC settlement agreements. (*Id.* at 14–15).[4] In declining summary judgment based on the absolute litigation privilege, the Court relied too heavily on the *Noerr-Pennington* Order's finding that the agreement between Toyo and the ITC respondents with regard to Atturo was an action taken by the parties themselves, unrelated to the ITC proceeding. (Dkt. 660 at 12—13). On further consideration, the Court finds that the absolute litigation privilege protects Toyo's conduct from Atturo's defamation and IDTPA claims.

As a preliminary matter, the Court rejects Atturo's contention that the *Noerr-Pennington* Order is the "law of the case" and the Court must continue to find that the absolute litigation privilege does not apply. (Dkt. 754 at 39—40). The law of the case doctrine is "not hard and fast." *Kathrein v. City of Evanston*, 752 F.3d 680, 685 (7th Cir. 2014) (quoting *Tice v. Am. Airlines, Inc.*, 373 F.3d 851, 854 (7th Cir. 2004)).[5] Both the February 2021 and *Noerr-Pennington* orders were denials of summary judgment. Generally such denials mean only "that the case should go to trial." *See*

---

[4] In the summary judgment briefing, none of the case law cited by Toyo applied the absolute litigation privilege to the claims at issue in this case other than defamation. *See Malevitis v. Friedman*, 753 N.E.2d 404, 407 (Ill. App. Ct. 2001) (addressing defamation and false light claims); *Johnson v. Johnson & Bell, Ltd.*, 7 N.E.3d 52, 56 (Ill. App. Ct. 2014) (finding privilege applied to claims of invasion of privacy, negligent infliction of emotional distress, and breach of contract); *O'Callaghan v. Satherlie*, 36 N.E.3d 999, 1002 (Ill. App. Ct. 2015) (intentional infliction of emotional distress and strictly liability for ultrahazardous activity); *Krueger v. Lewis*, 834 N.E.2d 457, 459 (Ill. App. Ct. 2005) (defamation).

[5] In *Curran v. Kwon*, cited by Atturo, the Seventh Circuit ruled that "the denial of summary judgment . . . was *not* the law of the case." 153 F.3d 481, 487 (7th Cir. 1998) (emphasis added).

*Switzerland Cheese Ass'n, Inc. v. E. Horne's Mkt., Inc.,* 385 U.S. 23, 25 (1966). The Seventh Circuit has distinguished summary judgment motions raising factual questions based on the sufficiency of the evidence from those raising a question of law. *Chemetall GMBH v. ZR Energy, Inc.*, 320 F.3d 714, 719 (7th Cir. 2003). *See also Young v. Ill. Dep't of Revenue*, 601 F. Supp. 2d 1055, 1057 (C.D. Ill. 2009) (explaining that after trial "courts are free to review questions of law addressed in pre-trial motions"); *Thompson v. Frank*, 730 N.E.2d 143, 145 (Ill. App. Ct. 2000) ("Whether an allegedly defamatory statement is subject to an absolute privilege is a question of law.").

In Illinois an attorney or private party to litigation is "absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." *Bedin v. Nw. Mem'l Hosp.*, 2021 IL App (1st) 190723, ¶ 39, appeal denied, No. 127257, 2022 WL 803425 (Ill. Jan. 26, 2022) (quoting Restatement (Second) of Torts § 586 (1977)). Although the privilege applies to a narrow class of communications, the defamatory matter in the proposed or pending proceeding need only have "*some relation* to the proceeding." *Kurczaba v. Pollock*, 742 N.E.2d 425, 438 (Ill. App. Ct. 2000) (emphasis added); *Johnson*, 7 N.E.3d at 56. "[T]he pertinency requirement is not strictly applied." *Bedin,* 2021 IL App (1st) 190723, at ¶ 40 (citation omitted).

Here the defamatory matter was contained in settlement agreements between Toyo and ITC respondents which were submitted to the ITC. Atturo does not argue that there were any defamatory statements beyond those in the settlement agreements or that Toyo disseminated these statements outside of the ITC Action. Toyo also argues, and Atturo does not dispute, that the statements were preliminary to and relate to this litigation, in which Toyo sued Atturo for trade dress infringement.

Thus given that the statements need only have some relation to the proceeding and courts "resolve all doubts in favor of pertinency," *Jackson v. Walgreens Co*., 2021 IL App (1st) 201261-U, ¶ 32, the Court finds that Toyo's statements in the ITC settlement agreements that it believed that Atturo was infringing had some relation to the ITC Action and to the 2014 complaint in this case.

### i. Defamation and IDTPA claims (Counts III and VI)

In light of the above, the absolute litigation privilege bars Atturo's defamation claim. It is well-settled in Illinois that the privilege applies to defamation claims. *See Johnson*, 7 N.E.3d 52. Courts have also applied the absolute litigation privilege to deceptive trade practices claims. *See PSN Ill., Inc. v. Ivoclar Vivadent, Inc.*, No. 04 C 7232, 2005 WL 2347209, at *6 (N.D. Ill. Sept. 21, 2005) (finding that privilege precluded deceptive trade practices claim based on statements made in the course of litigation); *PolyOne Corp. v. Lu*, No. 14 CV 10369, 2018 WL 4679577, at *15 (N.D. Ill. Sept. 28, 2018) (applying privilege to commercial disparagement and IDTPA claims). Similar to the defamation claim, as seen in the Jury Instruction in this case (Dkt.

741), the IDTPA claim required that Toyo made "false and misleading statements." (*Id.* at 23).[6]

Applying the privilege to Atturo's defamation and IDTPA claims furthers the purpose of the privilege: "Free access to the courts as a means of settling private claims or disputes is a fundamental component of our judicial system, and ' * * * courts should be open to litigants for the settlement of their rights without fear of prosecution for calling upon the courts to determine such rights.'" *Lyddon v. Shaw*, 372 N.E.2d 685, 690 (Ill. App. Ct. 1978) (citation omitted).[7]

### ii. Other claims (Counts I, II, IV, and V)

The absolute litigation privilege does not bar Atturo's four other claims. On Count I, tortious interference with contract, a court from this district recently observed that no Illinois court had "weighed in on whether the absolute litigation privilege applies to claims for tortious interference with contract." *GC Am. Inc. v. Hood*, No. 20-CV-03045, 2022 WL 910556, at *6 (N.D. Ill. Mar. 29, 2022). *See also Act II Jewelry, LLC v. Wooten*, No. 15 C 6950, 2016 WL 4011233, at *6 (N.D. Ill. July 27, 2016) (declining to extend the absolute litigation privilege to bar tortious interference with contract and with prospective economic advantage claims). For Count II, Illinois courts "have *not* extended the [absolute litigation] privilege to claims for intentional interference

---

[6] Atturo itself proposed this jury instruction language for the IDTPA claim. (Dkt. 685 at 59).

[7] Toyo's ITC complaint, which sought redress from a number of companies for infringement of its intellectual property in its tires, did not specifically name Atturo or its tires. Atturo says this conduct is anticompetitive. The litigation privilege in Illinois, however, permits publishing defamatory matter in a proposed or pending judicial proceeding if it bears some relation to the proceeding without regard for the party's motive or the unreasonableness of its conduct. *Bedin*, 2021 IL App (1st) 190723, ¶¶ 39, 40.

with prospective economic advantage." *Zdeb v. Baxter Int'l, Inc.*, 697 N.E.2d 425, 430 (Ill. App. Ct. 1998) (emphasis added); *see also Act II Jewelry, LLC*, 2016 WL 4011233, at *6 (rejecting argument that privilege should bar tortious interference with prospective economic advantage claim). No Illinois court has applied the privilege to tortious interference claims.

Nor has Toyo cited any Illinois case law applying this privilege to unfair competition or unjust enrichment. To the contrary, Illinois courts have cautioned that because the privilege is absolute, its scope is "necessarily narrow," *Stein v. Krislov*, 999 N.E.2d 345, 356 (Ill. App. Ct. 2013), and district courts generally have declined to extend the privilege absent Illinois authority, *see Del. Motel Assocs., Inc. v. Cap. Crossing Servicing Co. LLC*, No. 17 C 1715, 2019 WL 1932586, at *4 (N.D. Ill. May 1, 2019) (declining to extend Illinois' absolute litigation privilege to fraud claims); *Sanders v. JGWPT Holdings, Inc.*, No. 14 C 9188, 2016 WL 4009941, at *11 (N.D. Ill. July 26, 2016) (same).

Indeed this is not a case in which these other claims merely recast the defamation claim. The tortious interference, unfair competition, and unjust enrichment claims are not directed only at the allegedly defamatory statements Toyo made; they are based on Toyo's conduct as it relates to Atturo's customer Dunlap & Kyle (D&K) and Toyo's requirement that it never sell, import, or manufacture the Atturo tire.

Because the absolute litigation privilege bars Atturo's defamation and IDTPA claims, judgment will enter in Toyo's favor on those claims. However the Court finds that the privilege does not bar the four other claims (Counts I, II, IV, and V).

8

### b. *Noerr-Pennington* Doctrine

Next the Court addresses Toyo's argument that the *Noerr-Pennington* doctrine immunizes it from liability. That doctrine "extends absolute immunity under the antitrust laws to businesses and other associations when they join together to petition legislative bodies, administrative agencies, or courts for action that may have anticompetitive effects." *Mercatus Grp., LLC v. Lake Forest Hosp.*, 641 F.3d 834, 841 (7th Cir. 2011) (cleaned up). "*Noerr–Pennington* has been extended beyond the antitrust laws, where it originated, and is today understood as an application of the first amendment's speech and petitioning clauses." *New W., L.P. v. City of Joliet*, 491 F.3d 717, 722 (7th Cir. 2007). The scope of *Noerr–Pennington* immunity depends on the "source, context, and nature of the competitive restraint at issue." *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499 (1988). *See also Indian Head, Inc. v. Allied Tube & Conduit Corp.*, 817 F.2d 938, 945 (2d Cir. 1987) (citing the maxim that exemptions from the antitrust laws must be construed narrowly), *aff'd*, 486 U.S. 492 (1988).

Toyo argues its statements in the ITC settlement agreements are immune because *Noerr-Pennington* protects not only statements in litigation, "but also statements and actions taken in enforcing legal rights, such as pre-litigation assertions of intellectual property rights." (Dkt. 752 at 17). In the *Noerr-Pennington* Order, the Court focused on the Atturo Provisions, ruling that Toyo's submission of those provisions "as attachments to its motions to terminate the ITC proceedings did not constitute core petitioning activity," and also "were not incidental to Toyo's petitioning activity before

the ITC." (*Noerr-Pennington* Order at 13, 14). The Court relied on *In re Brand Name Prescription Drugs Antitrust Litig.*, which explained that the "doctrine does not authorize anticompetitive action in advance of government's adopting the industry's anticompetitive proposal. The doctrine applies when such action is the consequence of legislation or other governmental action, not when it is the means for obtaining such action." 186 F.3d 781, 789 (7th Cir. 1999). In *United Airlines, Inc. v. U.S. Bank N.A.*, the Seventh Circuit explained that "the *Noerr–Pennington* doctrine cannot be used to shelter joint activity . . . *independent of* any decision by a court or agency." 406 F.3d 918, 925 (7th Cir. 2005) (emphasis added). *See also A.D. Bedell Wholesale Co. v. Philip Morris Inc.*, 263 F.3d 239, 251 (3d Cir. 2001) ("Passive government approval is insufficient.").

Toyo criticizes the *Noerr-Pennington* Order for focusing on the Atturo Provisions when the entire settlement agreements should be viewed as legitimate petitioning activity. (Dkt. 752 at 19). However, "because immunized conduct cannot be aggregated with nonimmunized conduct without nullifying the immunity, it is necessary to identify protected and unprotected conduct." *In re Humira (Adalimumab) Antitrust Litig.*, 465 F. Supp. 3d 811, 828 (N.D. Ill. 2020) (citing *Mercatus Grp.*, 641 F.3d at 839); *see also Allied Tube*, 486 U.S. at 499 (explaining that the validity of efforts to influence governmental action "varies with the context and nature of the activity.").

The Court explained before and Toyo does not dispute that the settlement agreements were private agreements effective upon execution and that the ITC did

not participate in their drafting or negotiation. (*Noerr-Pennington* Order at 12, 14). Judge Lee noted that the court was not commenting on the propriety of Toyo's ITC action as a whole. (*Id.* at 11, n.6). Toyo points to the ITC Section 337 Mediation Program brochure (PX-19) but there is no evidence that Toyo and the respondents *participated in* the ITC Mediation Program.[8] And Toyo does not argue that including Atturo, its tire, or the Atturo Provisions in Toyo's motions to terminate were necessary to terminate the ITC Action. That is the basis for Judge Lee's determination that the restraint on Atturo here resulted from Toyo's *private* action. *See Garmon Corp. v. Vetnique Labs, LLC*, No. 19 C 8251, 2020 WL 3414983, at *3 (N.D. Ill. June 22, 2020) (explaining that *Noerr-Pennington* immunity does not apply "where a restraint on trade 'has resulted from private action'") (quoting *Allied Tube*, 486 U.S. at 499); *Rubloff Dev. Grp., Inc. v. SuperValu, Inc.*, 863 F. Supp. 2d 732, 743 (N.D. Ill. 2012) ("*Noerr–Pennington* does not apply when conduct is not geared toward the petitioning of government.") (citing *Mercatus*, 641 F.3d at 850–851).[9]

---

[8] Toyo also contends that the ITC judge "wrote an opinion about" the Atturo provisions. (Dkt. 752 at 19). The Court acknowledges that the settlement agreements are approved by an administrative law judge (ALJ) at the ITC. However, it is a stretch to characterize the ALJ's approval as an opinion regarding the Atturo provisions. The ALJ's December 13, 2013 "Initial Determination Granting Motion to Terminate Investigation as to Respondents Omni and D&K" referred to the settlement agreements and the ITC staff response letter (which addressed Atturo's November 20, 2013 Letter), but the ALJ did not address Atturo's concerns. Rather the ALJ found that terminating the investigation would not unduly burden, among other things, "public health and welfare" and "competitive conditions in the United States economy." (DX-93).

[9] This Court previously distinguished *Toyo Tire & Rubber Co. v. CIA Wheel Grp.*, No. SACV15246JLSDFMX, 2015 WL 4545187 (C.D. Cal. July 8, 2015). Importantly, the *CIA* court found "CIA does not adequately allege that the [ITC] litigation by Toyo underlying CIA's … counterclaims fall[] within the 'sham exception' to the *Noerr–Pennington* doctrine." *Id.* at *3. This Court agrees with Toyo's discussion of the "sham" exception. The Court is not relying on the "sham" exception and finds it does not apply here. Rather, the Court is not upsetting Judge Lee's finding that the Atturo Provisions "did not constitute core petitioning activity," and "were not incidental to Toyo's petitioning activity before the ITC" (*Noerr-Pennington* Order at 13, 14). *See also United Tactical Sys., LLC v. Real Action*

Judge Lee's finding is a narrow understanding of the *Noerr Pennington* doctrine. But the Court will not revisit its prior ruling that Atturo's counterclaims are not barred by the *Noerr-Pennington* doctrine.

## II.    Intellectual Property Privilege and Public Interest in Settlement

At trial, the Court reserved these equitable defenses for itself. (Dkts. 700, 746). In considering whether these defenses require dismissal of Atturo's claims, the Court is bound by the jury's explicit findings of fact and findings necessarily implicit in the verdict. *Sunny Handicraft (H.K.) Ltd. v. Envision This!, LLC*, No. 14 C 1512, 2019 WL 4735459, at *2 (N.D. Ill. Sept. 27, 2019)*; LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 790 F. Supp. 2d 708, 722 (N.D. Ill. 2011).

### a.    Intellectual Property Privilege

Toyo argues that the intellectual property privilege applies to all of Atturo's claims and that the public interest favors dismissing those claims. In a motion in limine ruling, this Court ruled that Toyo could rely on this privilege, described by courts as a party's ability to rely on its good faith belief in its intellectual property interest to justify its tortious interference. (*see* Dkt. 711). Atturo contends that: (1) for Counts I–II, the Court already applied this privilege by using burden-shifting language in Toyo's favor in the Jury Instructions; and (2) for Counts IV and V, the Court already ruled that the privilege does not apply.

The Court first addresses whether the intellectual property privilege applies to Counts IV and V (unfair competition and unjust enrichment). The Court previously

---

*Paintball, Inc.,* No. 14-4050, slip. op. at 74 (N.D. Cal. July 2, 2018) ("Real Action fails to rebut Counter-Defendants' evidence that the Indiana Action was not a sham proceeding.").

ruled that Toyo had "not cited authority that this privilege applies in Illinois to claims beyond tortious interference claims." (Dkt. 738). The sole unfair competition case on which Toyo now relies is *Am. Broadcasting Co. v. Maljack Prods.*, 34 F. Supp. 2d 665 (N.D. Ill. 1998), where the court applied the privilege to tortious interference and unfair competition claims. In the Illinois Supreme Court case discussing qualified privilege generally, *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, the court explained that "[c]ourts will recognize a privilege *in intentional interference with contract cases* where the defendant was acting to protect an interest which the law deems to be of equal or greater value than the plaintiff's contractual rights." 131 545 N.E.2d 672, 677 (Ill. 1989) (emphasis added). *Am. Broadcasting* thus extended the privilege.

As discussed above, however, this Court is not inclined to extend state law privileges absent guidance from the Illinois Supreme Court or Illinois appellate courts. *See Gust K. Newberg Const. Co. v. E.H. Crump & Co.,* 818 F.2d 1363, 1368 (7th Cir. 1987) ("Respect for state courts as the primary expositors of state law counsels restraint by federal court in announcing new state law principles") (citation omitted); *Phillips v. WellPoint Inc.*, No. 10-CV-00357-JPG, 2012 WL 6111405, at *9 (S.D. Ill. Dec. 10, 2012) ("The Court is mindful that in applying state law, federal courts must be conservative, not innovative."), *aff'd sub nom. Myrick v. WellPoint, Inc.*, 764 F.3d 662 (7th Cir. 2014). Finally, Toyo does not cite any authority applying this privilege to unjust enrichment claims.

As for Counts I–II, Toyo contends that this privilege should defeat Atturo's claims for interference with contract. However, the Court already applied the intellectual property privilege to these claims by using burden-shifting language in Toyo's favor in the Jury Instructions. The instructions required the jury to find that the interference was "intentional and unjustified," and defined those terms. Toyo relies on *Act II Jewelry, LLC v. Wooten*, in which the undisputed facts showed that Act II's communications related to protecting a legitimate litigation-related interest and defendants made no showing that the privilege was abused, so the court granted summary judgment in Act II's favor. 318 F. Supp. 3d 1073, 1084–85 (N.D. Ill. 2018). Here, Toyo did not raise the intellectual property privilege when it moved for summary judgment in 2020. And as the court in *Act II* acknowledged, generally abuse of privilege presents a fact question. *Id.* at 1084. The Court finds no reason to reverse the jury's finding that Toyo's interference was not justified. As Atturo points out, the jury found Toyo's conduct was "intentional," "unjustified," and "deceptive," "shock[ed] judicial sensibilities or violate[d] standards of commercial morality" and "violated fundamental principles of justice, equity, and good conscience." (Jury Instructions at pp. 17, 18, 20–22). Thus considering this privilege as an equitable defense, consistent with the jury's verdict, the Court cannot find that Toyo's belief in its intellectual property justified its interference with Atturo's business.

For these reasons the Court finds that the intellectual property privilege does not require dismissal of Atturo's remaining claims.

### b. Public Interest in Settlement

Toyo argues that the affirmative defense of the public interest in promoting ITC settlements requires judgment in its favor. Illinois's public policy does "favor[] settlement prior to trial." *King Koil Licensing Co. v. Harris*, 84 N.E.3d 457, 472 (Ill. App. Ct. 2017). However the cases cited by Toyo discussed, for example, the admissibility of evidence of settlement offers or circumstances under which a court can enforce a settlement agreement. (Dkt. 752 at 12–14). They did not rule that the defense barred or required dismissal of a claim.[10] Accordingly the Court will not dismiss Atturo's claims on this basis.

## III. Motion for JMOL

Toyo seeks judgment as a matter of law arguing that Atturo failed to submit substantial evidence supporting both liability and damages. Under Rule 50, judgment as a matter of law is proper only if "a reasonable jury would not have a legally sufficient evidentiary basis to find as the actual jury did." *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 601 (7th Cir. 2019) (internal quotation marks omitted) (quoting Fed. R. Civ. P. 50(a)). "This is a high bar." *Id*. The court must "give the nonmovant the benefit of every inference while refraining from weighing . . . the credibility of the evidence and testimony." *Id*. In ruling on a Rule 50 motion following a jury verdict, a court reviews the entire record and "disregard[s] all evidence

---

[10] In addition, at trial the jury heard significant testimony about ITC procedure and settlements. Indeed in response to Atturo's *Daubert* motion seeking to completely bar Toyo's ITC expert from testifying, this Court ruled in Toyo's favor that testimony about ITC practice and procedure was relevant and would provide the jury needed context and information to understand the evidence or determine a factual issue. (Dkt. 690).

favorable to the movant that the jury is not required to believe." *Id*. It is appropriate to overturn a jury verdict only if "no rational jury could have found for the nonmovant." *Id*.

Courts construe "the trial evidence strictly in favor of the party who prevailed before the jury." *Roberts v. Alexandria Transportation, Inc.*, 968 F.3d 794, 798 (7th Cir. 2020) (cleaned up). "It takes a lot to set aside a jury verdict." *Valdivia v. Twp. High School Dist. 214*, 942 F.3d 395, 396 (7th Cir. 2019).

### a. Liability

#### i. Count I – tortious interference with contract

In Illinois tortious interference with contract requires: "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages." *HPI Health Care Servs.*, 545 N.E.2d at 677 (internal citations and quotations omitted). Atturo argues that it had contracts with D&K in the dealer agreements (PX4 and PX5). Toyo contends that there was no breach because the agreements could be cancelled before shipment. Atturo does not dispute that the agreements were terminable at will.

Under Illinois law, "where the contract is one that can be terminated at-will by either party, the cause of action is classified as one for tortious interference with a prospective economic advantage, not tortious interference with contract." *Bommiasamy v. Conway*, 2020 IL App (1st) 190339-U, ¶ 37 (collecting cases). As an

Illinois appellate court explained, "[a] relationship created by a contract that is terminable at will is sufficient to support a claim of interference with prospective economic advantage because such a relationship 'will presumptively continue in effect so long as the parties are satisfied.'" *The Film & Tape Works, Inc. v. Junetwenty Films, Inc.*, 856 N.E.2d 612, 619 (Ill. App. Ct. 2006); *see also Ctr. for Dermatology & Skin Cancer, Ltd. v. Humana Ins. Co.*, No. 11 C 6837, 2012 WL 473133, at *3 (N.D. Ill. Feb. 8, 2012) (inducement of cancellation of terminable at will contracts did not state a claim of tortious interference with contract in Illinois).[11]

The Court therefore finds that overturning the jury's verdict in favor of Atturo on Count I is warranted.

### ii. Count II – tortious interference with business expectancy

In Illinois, tortious interference with prospective business expectancy requires: "(1) [plaintiff's] reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy, (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference." *Bullet Express, Inc. v. New Way Logistics, Inc.*, 70 N.E.3d 251, 263 (Ill. App. Ct. 2016) (cleaned up). Toyo argues that there was no evidence that it knew of Atturo's expected business relationship with D&K or that

---

[11] Atturo relies on *Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862 (7th Cir. 1999), in which the Seventh Circuit explained that in Illinois a tortious interference action can arise even if the contract is at will. However that case pre-dates more recent Illinois case law as well as *Cody v. Harris*, 409 F.3d 853, 859 (7th Cir. 2005) (recognizing that inducing the cancellation of an at-will contract is at most interference with a prospective economic advantage).

the expectation was reasonable, and Atturo did not prove Toyo's conduct was unjustified.

Atturo responds that the jury had a sufficient basis to find the knowledge element satisfied. Atturo points to the parties' stipulation that in October 2013 Toyo's ITC attorney, Dan Smith, and Atturo president Mathis had a telephone conversation; Mathis' testimony that he told Mr. Smith that Toyo's settlement agreements were interfering with Atturo's business and business relationships; the parties' stipulation that Toyo's attorney communicated with several Toyo employees about this call including Toyo's general counsel who was the lead in making settlement decisions in Toyo's ITC action; and that Toyo's general counsel subsequently signed the settlement agreements including the one with D&K (PX 26). Toyo points out that Mathis did not testify that he identified D&K specifically in his conversation with Mr. Smith. Considering the record as a whole, however, and giving Atturo "the benefit of every inference" without weighing "the credibility of the evidence and testimony," *Ruiz-Cortez*, 931 F.3d at 601, the Court finds that a rational juror would have a legally sufficient basis to find that Toyo knew of Atturo's business expectancy with D&K.

As to the reasonableness of the expectation, Atturo argues that the evidence at trial showed that Atturo expected D&K to become Atturo's biggest customer and Atturo's Sales Director for North America, George Lugo, who already had a 12-year relationship with D&K, intended for the Atturo Trail Blade M/T to be a core D&K product. In addition D&K corporate representative Dennis King stated that D&K

wanted to do business with Atturo and sell the Trail Blade M/T and if it was not for the Toyo-D&K Settlement Agreement, D&K possibly would have sold the Trail Blade M/T at more locations and would have sold other Atturo tires. Toyo points to other portions of King's testimony and contends that the evidence amounted to only a "one-sided expectation of future sales." (Dkt. 756 at 26). As to the element that Toyo's conduct was "unjustified," Toyo contends that its "only conceivable motive" was protecting its IP. But it was the jury's role to weigh the evidence, and the Court construes the evidence "strictly in favor of the party [Atturo] who prevailed before the jury." *Roberts*, 968 F.3d at 798.[12]

Finally, Toyo argues that Atturo had to prove "bad faith" for each claim. But Toyo cites no Illinois law indicating that tortious interference, unfair competition, or unjust enrichment claims require proof of "bad faith."[13] To the extent that Toyo contends that the jury should have been instructed on the IP privilege, that argument is addressed below. Accordingly, the jury had a legally sufficient evidentiary basis to find for Atturo on Count II.

---

[12] Toyo relies on cases such as *Instant Tech., LLC v. DeFazio*, 40 F. Supp. 3d 989 (N.D. Ill. 2014) and *CD Consortium Corp. v. Saint John Cap. Corp.*, 2021 IL App (1st) 201159-U, which were decided at different procedural postures and not resolved by a jury.

[13] To the contrary, when a privilege applies, case law indicates that "without justification" has the same meaning as "actual malice." *J. Eck & Sons, Inc. v. Reuben H. Donnelley Corp.*, 572 N.E.2d 1090, 1093 (Ill. App. Ct. 1991). In *Koehler v. Packer Grp., Inc.*, the court approved of the lower court's decision to reject defendants' proposed jury instruction that would require the jury to find that defendants "acted with actual malice"; instead the court instructed the jury that for tortious interference, the jury needed to find defendants "intentionally and without justification induced a contractual breach." 2016 IL App (1st) 142767, ¶ 48, 53 N.E.3d 218, 238.

### iii. Count IV – unfair competition

The Jury Instructions for the unfair competition claim explained that Atturo asserted that Toyo conditioned the settlement of unrelated patent claims on agreements by other companies in the tire industry to permanently cease and desist from selling the Atturo Trail Blade M/T tire, and therefore required the jury to find by a preponderance of the evidence that Toyo's actions "shock judicial sensibilities or violate standards of commercial morality." (Jury Instructions at 20). *See Wilson v. Electro Marine Sys., Inc.*, 915 F.2d 1110, 1118 (7th Cir. 1990); *see also Advanced Physicians, S.C. v. ATI Holdings, LLC*, 2015 IL App (1st) 141073-U, ¶ 36 (explaining that in Illinois the "theory of common law unfair competition covers a wide range of tortious conduct").

Toyo argues that Atturo's failure to prove interference requires the Court to overturn the jury's verdict on this claim. As explained above the Court finds that the jury had a legally sufficient evidentiary basis to find for Atturo on its claim for tortious interference with business expectancy. Accordingly Toyo provides no reason for the Court to overturn the jury's verdict on Count IV.

### iv. Count V – unjust enrichment

Finally, the Jury Instructions for the unjust enrichment claim explained that Atturo asserted that Toyo conditioned the settlement of unrelated patent claims on agreements by other companies in the tire industry to permanently cease and desist from selling the Atturo Trail Blade M/T tire, so the jury was asked to decide if Atturo proved by a preponderance of the evidence that Toyo was unjustly enriched. (Jury

Instructions at 21). "To prevail on a claim for unjust enrichment, a plaintiff must prove that the defendant retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience." *Zahran v. Republic Bank of Chi.*, 2019 IL App (2d) 170648-U, ¶ 59 (cleaned up). Unjust enrichment "does not require fault or illegality on the part of the defendant; the essence of the cause of action is that one party is enriched and it would be unjust for that party to retain the enrichment." *Id.*

Toyo argues that unjust enrichment is not an independent cause of action under Illinois law. *See Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 324 (7th Cir. 2021). Even so, here the underlying unlawful conduct is tortious interference and unfair competition. Those claims survive this motion so that is not a reason to dismiss the unjust enrichment claim.

Toyo also asks the Court to overturn the jury verdict because there was no evidence that Atturo improperly retained any benefit. Not true. Toyo's corporate representative witness and former president, Roy Bromfield, testified that Toyo "benefited" from including Atturo in the ITC settlement agreements. (Dkt. 736 at 696). Atturo president Mathis testified that the agreements benefited Toyo because they permanently constrained competition in the market. (Dkt. 728 at 201). The jury had a legally sufficient evidentiary basis to find for Atturo and Toyo has not met the high bar to overturn the jury verdict on Count V.

Having found the jury's verdict stands as to the claims for tortious interference with prospective business expectancy, unfair competition and unjust enrichment, the Court turns to the question of damages.

### b. Damages

The Court will not overturn the jury's compensatory damages award. "The amount of damages to be assessed is a question of fact for the jury to determine." *McIntyre v. Balagani*, 2019 IL App (3d) 140543-U, ¶ 81 (citation omitted). "[W]hen a federal jury awards compensatory damages in a state-law claim, state law determines whether that award is excessive." *Rainey v. Taylor*, 941 F.3d 243, 253 (7th Cir. 2019) (citation omitted). In Illinois, remittitur is appropriate "only when a jury's award falls outside the range of fair and reasonable compensation, appears to be the result of passion or prejudice, or is so large that it shocks the judicial conscience." *Id.* (cleaned up).

Atturo's expert Brian M. Daniel opined at trial that Atturo suffered lost profits in the amount of approximately $11.5 million from the loss of its business relationship with D&K. (Dkt. 733 at 588). Toyo argues that Mr. Daniel's opinion on lost profits cannot stand. The Court ruled on Toyo's *Daubert* motion seeking to bar Mr. Daniel's testimony before trial, finding his opinion about lost profits reliable. (Dkt. 687). Many of Toyo's arguments rehash its *Daubert* motion. Toyo had the opportunity to, and did, cross-examine Mr. Daniel at trial. Toyo also made the decision not to call *its* damages expert at trial. (Dkt. 683 at 11). Further, as Atturo argues, in addition to Mr. Daniel,

Atturo presented testimony about damages from other witnesses at trial.[14] Toyo's cited cases do not support striking the jury's compensatory award in this case. *Haslund v. Simon Prop. Grp., Inc.*, 378 F.3d 653 (7th Cir. 2004), for example, involved a bench trial and did not involve expert testimony.

The jury awarded Atturo $10 million in compensatory damages, lower than Atturo's expert's damages estimate. Toyo argues that the fact that the jury did not go with the $11.5 million number means there is "no basis for" the $10 million award. This is not persuasive: "the court looks only at the 'bottom line,' to make sure [the award is] reasonable, and doesn't worry about the mental process that led there." *Tuf Racing Prod., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000). The Court will not second-guess the jury's compensatory damages award.

For punitive damages, however, other considerations come into play. Punitive damages "are not awarded as compensation, but serve instead to punish the offender and to deter that party and others from committing similar acts of wrongdoing in the future. . . . Because punitive damages are penal in nature, they are not favored in the law, and the courts must take caution to see that punitive damages are not improperly or unwisely awarded." *Lawlor v. N. Am. Corp. of Ill.*, 983 N.E.2d 414, 430 (Ill. App. Ct. 2012) (cleaned up). "[S]ince a plaintiff is presumed to be made whole by the compensatory award, punitive damages should be awarded only if the defendant's conduct is 'so reprehensible as to warrant the imposition of further sanctions to

---

[14] As this Court previously noted (Dkt. 660), Illinois law does not even "require expressly expert testimony to prove lost profits damages." *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 634 (7th Cir. 2007).

achieve punishment or deterrence.'" *Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*, 980 F.3d 1117, 1141 (7th Cir. 2020) (citation omitted), *cert. denied*, 142 S. Ct. 1400 (2022). "Punitive damages may be awarded when the defendant's tortious conduct evinces a high degree of moral culpability, that is, when the tort is committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others." *Slovinski v. Elliot*, 927 N.E.2d 1221, 1225 (Ill. 2010). "A federal court, however, can (and should) reduce a punitive damages award sometime before it reaches the outermost limits of due process." *Saccameno v. U.S. Bank Nat'l Ass'n*, 943 F.3d 1071, 1086 (7th Cir. 2019). The Court considers "the degree of reprehensibility, the disparity between the harm suffered and the damages awarded, and the difference between the award and comparable civil penalties." *Id.*

The Court finds the $100 million in punitive damages to be excessive. Atturo "is presumed to be made whole by the compensatory award," so punitive damages are to be awarded "only if [Toyo's] conduct is 'so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence.'" *Epic Sys. Corp.*, 980 F.3d at 1141.

The jury's verdict on the six claims against Toyo shows the jury found that Toyo's conduct was wrongful, deceptive, and violated principles of commercial morality, justice, equity, and good conscience. On the other hand, considering the trial record as a whole, the Court does not find the punitive damages award to be warranted. *See Epic Sys.*, 980 F.3d at 1145 (remanding the case to the district court to reduce

24

punitive damages to, at most, a 1:1 ratio relative to the compensatory damages awarded); *Saccameno,* 943 F.3d at 1086 (punitive damages awarded exceeded constitutional limits and had to be reduced); *Int'l Union of Operating Engineers, Loc. 150 v. Lowe Excavating Co.,* 870 N.E.2d 303, 324 (Ill. 2006) (reducing award of punitive damages to $50,000).

Here, the conduct was not extreme and does not warrant a large punitive damages award: the jury determined Toyo's conduct was wrong and harmful but the Court is certain the conduct was not so intentionally willful or wanton to warrant a severe punishment. A punitive damages award ten times the compensatory damages award is extreme and excessive. For these reasons, the Court reduces the punitive damages award to $100,000.

## IV.    Toyo's Motion for a New Trial

In the alternative to its request for judgment as a matter of law, Toyo moves for a new trial. This motion is denied. A new trial is appropriate under Rule 59(a) "if the trial was in some way unfair to the moving party." *Martinez v. City of Chicago*, 900 F.3d 838, 844 (7th Cir. 2018) (cleaned up). A court may grant a motion for a new trial based on misconduct by the opposing party or counsel, but in order to obtain this "dramatic relief," the movant must demonstrate that the misconduct prejudiced him. *Brandt v. Vulcan, Inc.*, 30 F.3d 752, 758 (7th Cir. 1994). "A motion for a new trial can be granted when the district court—in its own assessment of the evidence presented—believes that the verdict went against [its] manifest weight." *Mejia v. Cook County*, 650 F.3d 631, 634 (7th Cir. 2011). Toyo presents a multitude of reasons

arguing for a new trial, but this case does not meet the high standard warranting a new trial.

Toyo argues that the Court should have instructed the jury on the intellectual property privilege. The Court decided, as a matter of law in Toyo's favor and over Atturo's objection, that this privilege applied to the tortious interference claims. It accordingly instructed the jury that these counts required the jury to find that Toyo's conduct was "intentional and unjustified." (Jury Instructions at pp. 17–18). The Court instructed that interference is "unjustifiable" if Toyo acted for the sole or primary purpose of interfering with Atturo's contract. (*Id*.). As already explained, Toyo does not cite any case law extending this privilege to claims beyond the tortious interference claims. Further, the Court does not believe Toyo's cited case law requires a new trial. *Ray Dancer, Inc. v. DMC Corp.*, 594 N.E.2d 1344 (Ill. App. Ct. 1992), for example, involved an intellectual property privilege on summary judgment, and did not address jury instructions. Moreover, the Court reserved the intellectual property privilege as a defense for itself to consider post-trial and as explained above, the Court finds it does not require dismissal of Atturo's claims.

The Court already addressed the compensatory and punitive damages awards and is significantly reducing the punitive damages award. Toyo relies on another lost-business case but Illinois courts "traditionally decline[] to make such comparisons in determining whether a particular award is excessive." *Richardson v. Chapman*, 676 N.E.2d 621, 628 (Ill. 1997). Finally, Toyo argues that the Court's evidentiary rulings caused it prejudice and that Atturo's counsel's conduct at trial "tainted the outcome."

Atturo responds that Toyo waived a number of these arguments because did not raise them at trial. The Court has reviewed Toyo's arguments and finds they do not meet the high bar for a new trial. *See Whitehead v. Bond*, 680 F.3d 919, 928 (7th Cir. 2012) (explaining that "[a] new trial should be granted . . . only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience.") (cleaned up); *Plyler v. Whirlpool Corp.*, 751 F.3d 509, 513 (7th Cir. 2014) (same).

### *Atturo's Motion*

## V.      Motion for Injunctive Relief and Other Corrective Actions

Atturo moves for permanent injunctive relief and other corrective actions "to protect Atturo against Toyo's continued disparagement of Atturo's products and business." (Dkt. 753). Atturo directs its request for injunctive relief only at its IDTPA claim. (Dkts. 753, 753-1). Because, as discussed above, the Court is entering judgment in Toyo's favor on the IDTPA claim, Atturo's motion [753] is denied.

## CONCLUSION

For these reasons, Toyo's motion for judgment or alternatively a new trial [751] is granted in part and denied in part and Atturo's motion for injunctive relief and other corrective actions [753] is denied.

Judgment shall enter in Toyo's favor on Atturo's Count I (tortious interference with contract), Count III (defamation), Count VI (IDTPA) and Count VII (Lanham Act). Judgment shall enter in Atturo's favor on Atturo's Count II (tortious interference with prospective business expectancy), Count IV (unfair competition),

and Count V (unjust enrichment). Accordingly, judgment shall enter in favor of Atturo Tire Corporation and against Toyo Tire Corporation and Toyo Tire U.S.A. Corp. in the amount of $10,000,000 in compensatory damages and $100,000 in punitive damages. Civil case terminated.

E N T E R :

Dated: May 10, 2022

_____
MARY M. ROWLAND
United States District Judge